IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.

CAPTURE ELEVEN, LLC,
a California limited liability company,

      Plaintiff,

v.

OTTER PRODUCTS, LLC,
a Colorado limited liability company, and
TREEFROG DEVELOPMENTS, INC. d/b/a
LIFEPROOF, a Delaware corporation.

      Defendants.

---

### PLAINTIFF CAPTURE ELEVEN, LLC'S COMPLAINT

Plaintiff Capture Eleven, LLC ("Capture Eleven"), by and through its undersigned counsel, files this Complaint against Defendants Otter Products, LLC ("Otter") and Treefrog Developments, Inc. d/b/a LifeProof Inc. ("LifeProof") and states as follows:

### NATURE OF THE ACTION

1. This action seeks to recover for copyright infringement. Otter and LifeProof are in the business of developing and selling protective cases for various mobile devices and other accessories and are at-present two of the largest and most well-known companies in the industry. As part of their products, product packaging and marketing, Otter and LifeProof have used, and continue to use, Capture Eleven's copyrighted photographs without permission or authorization from Capture Eleven, using the look and feel to build a reputation and impression with consumers that allowed them to charge premium prices and stand as market

1

leaders.  In doing so, Otter and LifeProof have violated Capture Eleven's exclusive rights under

17 U.S.C. § 101 *et seq*. (the "Copyright Act") and continue to profit from their wrongful

conduct.

## JURISDICTION AND VENUE

2.     The Court has personal jurisdiction over both Defendants as their principal

place of business, on information and belief, is in Fort Collins, CO.  Both have minimum

contacts with the State of Colorado such that the exercise of personal jurisdiction over them does

not offend traditional notions for fair play and substantial justice.  At the direction of Defendants,

209 S. Meldrum St., Fort Collins, Colorado was used as the invoicing address.  On information

and belief, both Defendants have long-employed a substantial number of Colorado residents to

perform services at their Colorado office, including in connection with creation of the infringing

products, packaging and other uses alleged herein.

3.     The Court has subject matter jurisdiction in this action pursuant to 28

U.S.C. § 1331 and § 1338(a) as this case arises under the Copyright Act.

4.     The Court also has subject matter jurisdiction in this action pursuant to 28

U.S.C. § 1332 because this dispute is between citizens of complete diversity, including a

Delaware company with its principal place of business in Fort Collins, Colorado and a Colorado

company with its headquarters in Fort Collins, Colorado, and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C.

§ 1400(a) as the Defendants reside and/or maintain a principal place of business in this District.

## PARTIES

6.      Plaintiff Capture Eleven is a California limited liability company with a principal place of business at 2575 Fortune Way, Suite C, Vista, CA 92081.  It is the assignee to all relevant copyrights and related interests germane to this lawsuit.  First, Justin L'Heureux's ("L'Heureux") relevant works were embraced within the Work for Hire (and irrevocable assignment) agreement between Justin L'Heureux and Stage Two Nine ("STN"), the photography company of L'Heureux.  Second, under the Copyright and Other Interests Quitclaim Assignment, Capture Eleven became as of February 25, 2019 the owner of all intellectual property interests relating to photographs and derivative works taken by L'Heureux and STN for Otter and Otter's related entities.   True and correct copies of the Work for Hire and Quitclaim Assignment agreements are attached as Exhibits A and B, respectively, and incorporated by reference as if fully alleged herein.

7.      Upon information and belief, Defendant Otter is a Colorado limited liability company with a principal place of business located at 209 S. Meldrum Street, Fort Collins, CO 80521.

8.      Upon information and belief, Defendant LifeProof is a Delaware corporation with a principal place of business previously located at 15110 Avenue of Science, San Diego, CA 92128 and now located at 209 S. Meldrum Street, Fort Collins CO 80521.  On or around December 2, 2016, LifeProof filed a notice of surrender with the California Secretary of State, declaring its surrender of "its right and authority to transact business in the State of California," and providing 209 S. Meldrum St., Fort Collins, Colorado as its address.

## FACTUAL BACKGROUND

9.      L'Heureux is a highly-regarded photographer who is engaged by household-name companies to give the look and feel needed in fiercely competitive markets, and

3

in particular in 2013 was well-regarded for photographs that captured the outdoor lifestyle and extreme lifestyle.

10.     In 2013, Otter acquired a rival brand, LifeProof, which was known for designing and manufacturing durable cases that protect smartphones from water, snow, dirt, and drop damage.

11.     Otter and LifeProof were desirous of selling their LifeProof phone cases at premium prices and targeting consumers who either have active lifestyles and would benefit from durable cases, or who associated themselves with the active lifestyle or active lifestyle demographic.  These cases were touted to stand up to water, snow, dirt, and shock, with slogans such as "Venture from Beaches to Metropolises with LifeProof Right by Your Side," and "Cases to help you live full time."

12.     Otter and LifeProof (through Otter) retained L'Heureux as an independent contractor to take photographs and create other content, including footage of outdoor sports and activities that they could use to market their LifeProof cases for electronics.

13.     Ultimately, Otter and L'Heureux signed an Independent Contractor Agreement, with a stated Effective Date of January 1, 2015.  Under this Independent Contractor Agreement ("ICA") between Otter Products, LLC and Justin L'Heureux, L'Heureux was guaranteed at least a one year contracting term where he was to receive $15,000 per month for up to 6 days of monthly photographic services.  The ICA provided it would automatically extend monthly after the initial first year until terminated.

14.     Justin L'Heureux (and STN starting on or around May 2016) has provided photographs to Otter and LifeProof over the years that have been integral to the successful

marketing of many of at least LifeProof's products such as LifeProof phone cases and other electronics gear.

15.     In fact, the LifeProof active lifestyle image was built from the ground up using the look and feel of L'Heureux's photographs.  One of the reasons LifeProof and then Otter were so drawn to L'Heureux in the first instance was his demonstrated ability to capture the most exhilarating and engaging look and feel of the active lifestyle and extreme sports lifestyle.

16.     The ICA's payment structure was a heavily discounted rate, reflective of the steady and assured form of revenue provided by a set $15,000 monthly amount, which provided for additional revenue if it went beyond six days per month.  L'Heureux (and later STN) often charged substantially more than this, even for photo shoots providing limited usage rights (with an even larger differential for unlimited usage rights).

17.     For example, one 2015 project was at $37,500 for four days with two years of unlimited usage.  Other examples in 2016 included four days of photo shoots with two years usage for $38,000 total, and $95,000 for five days photo shoots and two years usage.  In 2017, an exemplative two-day photo shoot was $20,000 with two-year trade usage excluding outdoor and broadcast, and another was $39,000 for three days of photo shoots with three-year usage minus broadcasts.

18.     As can be seen, the prices paid by Otter and LifeProof are far less than even single-project shoots by other similarly-situated companies, even for shoots with usage rights that spanned two years (for which L'Heureux and STN charged on the magnitude of 400-500% more than Otter and LifeProof were charged).  Unlimited usage or transfer of copyrights

ran far higher than that.  Thus, during the ICA, the economic terms reflected what was essentially an assured $180,000 per year base for L'Heureux.

19.     Like a supplier who sells at volume to Wal-Mart, this economic arrangement was justified while the ICA continued to provide L'Heureux with the commensurate benefit for the burden of the heavy discount.

20.     L'Heureux's ICA relationship with Otter and LifeProof ended on April 30, 2016.  Specifically, Bill Roden notified L'Heureux in writing: "This email is terminating your contract effective April 31st [2016]."  This was just at the time that STN was formed by L'Heureux as the company to provide his photographic services going forward.

21.     Otter and LifeProof then immediately approached STN through L'Heureux to find a new arrangement that allowed for L'Heureux to be the photographer for product-specific photo shoots.  STN through L'Heureux expressed concern that the price for such new relationship was too low if it was to remain at what the prior ICA would translate to on a per-day shoot rate and proposed the parties discuss a price to account for such one-off photo shoots.

22.     Otter and LifeProof stated that they did not want to budget to pay for more at the time of doing the photo shoots.  However, these photo shoots had become product-specific, meaning they were shot for a specific case housing a specific phone or electronic device.

23.     Thus, L'Heureux told Otter and LifeProof that this pricing was fine, and they could stick to the prior price so long as it was just for use in promoting the specific product that was shot, and that the parties could negotiate broader usage down the road if Otter and LifeProof decided they wanted broader use.

24.     The parties' preparations and communications concerning each of these product-specific, one-off shoots were fully consistent and confirmatory of such limited use. Before product shoots occurred, Otter and LifeProof would email L'Heureux communications that included concept ideas, decks with shot lists, and storyboards describing the specific purpose of the shoot or the specific products for the shoot.

25.     A single exception to such well-organized, product-specific shoots was last-minute shoots for photos to be used on social media only.  Specifically, in November 2016, when the Periscope social media app with its Live Event broadcast was becoming all the rave, Otter and LifeProof paid L'Heureux to come to a Red Bull dirt bike event to take photographs for this Live Event to be used for behind-the-scenes social media shots.  The last-minute nature of the shoot, lack of developed theme, and price paid were all commensurate only with social media usage, not things such as permanent case packaging.  And in the industry, such impromptu social-media shoots are well-understood to be limited to social-media usage only, and does not include usage for things like packaging or print marketing materials.

26.     Further, such limited usage naturally was time-limited as phones are a fast-evolving industry, particularly the iPhone and Samsung Galaxy, both of which regularly have shape and size modifications that make older phone cases obsolete.  The shoots were done in advance of a particular season, further emphasizing that even within a year, photos from that shoot would be used to market the product within that particular season of that particular year. Similarly, live-event social media posts (including the Periscope-related dirt bike shoot) fade as they are pushed down by more recent posts, with the intent of being highly relevant in the present but obsolete rather quickly.

27.     Thus, in no way was Otter and LifeProof's use intended to be in perpetuity, but quite to the contrary was intended to have a limited useful life.  This nature of the usage that L'Heureux and STN were shooting for from May 2016 onward is one of the key reasons why the arrangement was agreeable to STN, and was the reasonable expectation on duration built into the nature of the engagements.

28.     These one-off product-specific shoots (and the Live Event) took place from mid-2016 through Spring 2018, all after the effective date of termination for the ICA.

29.     To be clear, Otter and LifeProof never signed a formal written agreement for the shoots with L'Heureux, STN or any of their agents at any time, including between mid-2016 and the spring of 2018, although rather non-descript invoices were issued and paid.

30.     L'Heureux and/or STN was paid approximately $2,500 for each day that L'Heureux shot for Otter, in addition to certain reimbursements.

31.     This suit concerns solely those photo shoots from May 2016 onward, for which L'Heureux took photograph that were delivered to Otter and LifeProof, generally on external media or hard drives, and include those covered by the Certificate of Registration attached hereto as Exhibit C (collectively, the "L'Heureux Works").

32.     As is customary in the photography industry, STN through L'Heureux or its other agents (and L'Heureux prior to STN), regularly negotiates with its clients and prospective clients regarding the price to be paid and the scope of usage rights.  The scope of usage rights informs and has a substantial impact on pricing.

33.     It would be commercially unreasonable for a party (particularly one of Otter and LifeProof's size and experience) engaging STN or a similar photographer to assume or believe that it had unlimited usage rights to the photographs, or that it could somehow simply

add the photos to a photo library for use whenever it desired.  L'Heureux and STN did not state to the contrary in connection with any of the photographs from May 2016 onward.

34.     The scope of any usage rights for the L'Heureux Works from any particular photo shoot were to be limited to the specific product shot (and to event-related social media for the Live Event shoot) absent further permission from STN.  So, for example, a photo shot for a photoshoot for an FRE case was limited to use specific to the FRE case for the specific phone and model covered by that shoot.

35.     The pricing structure, industry custom, party conversations, and shoot-related materials exchanged, including the details alleged above, all consistently confirmed Otter and LifeProof's at-most limited usage rights.

36.     In May 2018, Otter and LifeProof notified L'Heureux that they would no longer retain STN for future photo shoots, consistently refusing to provide any explanation when pressed.  Prior to this, Otter and LifeProof had expressed praise at the work provided by STN.

37.     Up to that time, L'Heureux and STN did not know that Otter and LifeProof intended to use and had in fact used the L'Heureux Works for any purposes beyond the above-noted limited uses for which Otter and LifeProof had been permitted.

38.     However, the May 2018 notification led to an investigation of marketplace usage that shocked STN.  These infringements have continued to the present, and L'Heureux only reasonably discovered them in May 2018, and Capture Eleven it entitled to recover all damages and profits for unauthorized uses dating May 2016 onward.  At the least, even putting aside the discovery rule, Capture Eleven is entitled to all damages and profits dating August 24, 2017 onward.

39.     On May 31, 2018, STN, through counsel, informed Otter and LifeProof in writing that "notice is hereby given that any implied license or other rights in the L'Heureux Works asserted by Otter are hereby terminated."  This included, without limit, "all cases of Slam, Next , Fre and Nuud iphone 7 and 7 plus, iphone 8 and 8 plus, iphone X, Galaxy S7, Galaxy S8 and S8+, Galaxy S9 and S9+."

40.     On August 23, 2018, a Photo Compilation for Cases and Electronics that includes the L'Heureux Works was registered with the United States Copyright Office (the "Certificate of Registration").  Exhibit C attached hereto is a true and correct copy of the Certificate of Registration, along with a list of the photographs included in the registration by file name.  Each of the L'Heureux Works is an original, creative work in which Capture Eleven owns valid copyrights, properly registered with the United States Copyright Office.  *See* Exhibit C, Certificate of Registration.

41.     Despite ending its relationship with STN and receiving formal notice that any implied license or other rights were terminated, Otter and LifeProof retained and continues to prominently feature numerous copyright-protected L'Heureux Works on the unauthorized packaging of many of its products, in addition to other unauthorized marketing and promotional materials that go beyond the (at most) limited scope of authorized uses.

42.     After substantial activity by both parties relating to this dispute, counsel for L'Heureux and STN confirmed in an email to Otter and LifeProof's counsel on May 3, 2019: "[N]either party is waiving any past or future claims, or suggesting they can't or won't later pursue each other."

43.     This suit follows in due course.

**OTTER AND LIFEPROOF NEVER OBTAINED PERMISSION FOR USE OF THE PHOTOS ("ALL-USE INFRINGEMENT")**

44.     Capture Eleven is currently aware of product packaging and other usage (including without limit website, trade shows, and social media) of the L'Heureux Works that go beyond the specific cases and specific phones for which they were shot.

45.     Implied licenses are controlled by state law and implied copyright licenses to use works are narrowly found and even more narrowly drawn to the specific purposes of the parties, with any lack of meeting of the minds resulting in the failure to create an implied license.

46.     After a dispute arose, Otter and LifeProof conveniently have contended that broad usage rights exist.

47.     This is their after-the-fact attempt to sweep in Otter and LifeProof's indiscriminate use of the L'Heureux Works, in ways that were inconsistent with the understanding Otter and LifeProof knew L'Heureux and STN had, and that the parties had confirmed in word and mutual action, and without any timely attempt to advise STN of such use.

48.     As noted above, usage rights (if any) are extremely limited.  The facts are not sufficient to show any implied license exists, and thus all uses by Otter and LifeProof are unauthorized infringements on that basis.

49.     Thus, Capture Eleven brings in the first instance a claim for copyright infringement as to all uses by Otter and LifeProof of the L'Heureux Works ("All-Use Infringement").

50.     This includes without limit eighteen infringing product packaging and product-specific web content for cases covering nine different IPhone, Samsung Galaxy, and Google Pixel models which has resulted in over $100 million in infringing sales.  *See, e.g.*,

Exhibit D (showing Registered Photo #5 – Wakeboarder Lake Powell 1_5:2016_J9A8032.jpg – on infringing packaging for FRE for Samsung Galaxy S8).

> 51.    Included in the infringement are the following phone cases, sold with the infringing packaging:

| | Photo Shoot | Device Name | Case Product Name | Product Image |
|---|---|---|---|---|
| 1 | Nov. 2016 Riverside | iPhone 8+ | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 2 | Nov. 2016 Riverside | iPhone 7+ | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 3 | Nov. 2016 Riverside | iPhone 8 | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 4 | Nov. 2016 Riverside | iPhone 7 | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 5 | Nov. 2016 Riverside | iPhone X | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 6 | Nov. 2016 Riverside | Samsung Galaxy S9 | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 7 | Nov 2016 Oceanside<br><br>May 2017 Downtown S.D. | iPhone 7 | SLAM | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66)<br><br>Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) |
| 8 | Nov 2016 Oceanside<br><br>May 2017 Downtown S.D. | iPhone 7+ | SLAM | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66)<br><br>Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) |
| 9 | Nov 2016 Oceanside<br><br>May 2017 Downtown S.D. | iPhone 8+ | SLAM | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66)<br><br>Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) |

| 10 | Nov 2016 Oceanside<br><br>May 2017 Downtown S.D. | iPhone 8 | SLAM | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66)<br><br>Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) |
| 11 | May 2017 Torrey Pines | iPhone 8 | NUUD | Gazing girl with longboard San Diego_5:2017_8V2A1116.jpg (Registered Photo #46) |
| 12 | May 2017 Torrey Pines | iPhone 8+ | NUUD | Gazing girl with longboard San Diego_5:2017_8V2A1116.jpg (Registered Photo #46) |
| 13 | Nov 2016 Oceanside<br><br>May 2017 Downtown S.D. | iPhone X | SLAM | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66)<br><br>Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) |
| 14 | May 2016 Lake Powell | Samsung Galaxy S8 | FRE | Wakeboarder Lake Powell 1_5:2016_J9A8032.jpg (Registered Photo #5) |
| 15 | Aug. 2017 Vancouver | Samsung Galaxy S9 | SLAM | Running woman Vancouver_8:2017_8V2A3077.jpg (Registered Photo # 96)<br><br>Bikerider (in background) Vancouver_8:2017_8V2A0538.jpg (Registered Photo #81) |
| 16 | Nov. 2016 Riverside | Samsung Galaxy S9+ | LifeProof FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |
| 17 | Aug. 2017 Vancouver | Samsung Galaxy S9+ | SLAM | Running woman Vancouver_8:2017_8V2A3077.jpg (Registered Photo # 96)<br><br>Bikerider (in background) Vancouver_8:2017_8V2A0538.jpg |

| 18 | Nov. 2016 Riverside | Google Pixel 2 | FRE | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) |

Table 1:  Exemplative Instances of Product-Specific Infringement Identified To-Date

52.     Notably, the iPhone 8 and 8 plus were released or announced September 22, 2017, the iPhone X was released or announced November 3, 2017, and the iPhone XS/XR were announced September 21, 2017, with the Samsung Galaxy S9 and S9+ released or announced on March 2018, the Google Pixel 2 was announced or released October 4, 2017.

**TO THE EXTENT ANY PERMISSION WAS SOMEHOW IMPLIED, IT WAS TERMINATED EFFECTIVE AS OF MAY 31, 2018 ("POST-TERMINATION INFRINGEMENT")**

53.     Under Colorado and California law, most contracts of indefinite duration are terminable at-will or under reasonable circumstances, and are not irrevocable.  Any possible implied license between STN or L'Heureux, on the one hand, and Otter or LifeProof, on the other hand, was revocable.

54.     If the Court or trier of fact finds there is an implied license, Capture Eleven pleads infringement and unauthorized use in the alternative for post-termination use, for an infringement period of June 1, 2018 onward.  Such unauthorized usage took place, whether or not Otter and LifeProof are correct in their suggestion that any implied license was intended to be of indefinite duration.

55.     If Otter and LifeProof's allegation is correct, namely that they obtained an implied license of indefinite duration and unlimited scope (or scope large enough to encompass the infringing uses here), then such usage rights were still terminable and properly terminated on

May 31, 2018 both because: (1) the entire implied license was revocable or, in the alternative, (2) because at least the uses beyond the specific product shot (or Live Event in the case of the November 2016 dirt bike photo shoot) lacked consideration and were revocable at-will.

56.     If it is the former, the infringement is co-extensive with the "All-Uses Infringement" except the infringement begins June 1, 2018, and if it is the latter then the infringement is co-extensive with the "Outside Scope Infringement" alleged below except the infringement begins June 1, 2018.

57.     Otter and LifeProof's investment in the photos was neither substantial or great compared to the benefit received from use of the photos, and there are no special considerations that would deviate from the normal rule of at-will termination.

a.     Otter and LifeProof did not need additional time to recover their investment.  Otter and LifeProof paid under $100,000 total to STN in connection with the at-issue photo shoots, and enjoyed profits of at least an estimated approximately $6 million per quarter on product sales where the product boxes used STN's images.  The last-shot photos at issue here were shot in August 2017, almost a year before the termination.  Thus, for this and other reasons alleged herein, Otter and LifeProof's time of usage prior to the May 31, 2018 termination was far more than sufficient to recover any investment in Otter and LifeProof's images.  Also, no express representation was made by STN that Otter and LifeProof could make use for some unlimited duration.

b.     Second, Otter and LifeProof could still have obtained the value of their investment in the photo shoots by using stills from video footage.  Otter and LifeProof had ample video footage taken from the same events that they could have substituted in the place of STN's images.  Thus, Otter and LifeProof did not even need the time to do another photo shoot,

if they had acted promptly in the face of the termination notice.  In fact, when STN delivered additional photos under protest after the notice of termination and with a full reservation of rights, Otter and LifeProof used stills from their video footage rather than the L'Heureux Works, with their stated reason being they were concerned about exposing themselves to further liability to L'Heureux and/or STN.

          c.      Third, Otter and LifeProof never did swap out any images for the infringing images they had already placed on packaging or elsewhere.  Their website still uses the Copyrighted Works, a swap that would have been a very easy fix.  Had they have had concern, Otter and LifeProof had more than enough time to request a phase-out period and phase out usage in response to the notice of termination, but at no time did they do so.

        58.      Otter and LifeProof's actions and expenditures did not possess the elements of detrimental or reasonable reliance, including because they understood that any uses were extremely limited as was necessary to meet their budgeted price, there was in fact no express agreement on a perpetual length of time of use, Otter and LifeProof knew or should have known that by failing to secure such term their investments might be lost if the license were revoked, and this is not a permanent structure that had to be ripped down (as noted, Otter and LifeProof were free to swap out stills from the videos taken by another contractor from each photo shoot, but simply chose not to).

        59.      The May 31, 2018 termination constituted reasonable terms and express notice of termination, and regardless of any such potential implied license, in the words of Judge Posner "the letter rendered the license agreement kaput" and any subsequent usage was infringing.

**REGARDLESS, THE PHOTOS WERE SHOT FOR VERY LIMITED USES AND BROADER USAGE WAS UNAUTHORIZED ("OUTSIDE-SCOPE INFRINGEMENT")**

60.     In the most egregious aspect of Otter and LifeProof's infringement, they obtained the pictures under the express and implied auspice of very limited uses, but then went on to make much broader usage of the L'Heureux Works without even attempting to provide L'Heureux or STN notice or negotiate the fair price for such usage.  This was despite the parties having expressly discussed and expressly agreed to so-limit the uses absent further agreement.  This was egregious, deliberate and intentional unauthorized use even putting aside the express agreement limiting use of the L'Heureux Works.

61.     An example is particularly instructive.  Suppose a car-less man tells his friend he must go to the store to pick up his groceries.  In the next breath, the car-less man asks to borrow his friend's car, to which the friend readily agrees.  The next week the same conversation happens.  And the next.  The friend grows to expect the request and sometimes more is said, sometimes less is said, but always the friend understands the car-less man to be picking up groceries.  Suppose this friend were to find the car-less man had instead been taking joy rides to Mexico, racing the car, shuttling passengers as an Uber driver, and lending it to still others.  Whether he expressly linked the grocery pickup to his request to use his friend's car, or merely made the request in that context, the end result is the same – the car-less man had no authorization to go anywhere beyond the grocery store and his doing so was unauthorized.  Any attempt by the car-less man to contend that the friend had placed no limitations on where he could go would be soundly rebuked.

62.     Otter and LifeProof's actions here are no less authorized.  Looking just at the cases with infringing packaging, there were five photos placed as the dominant look and feel on packaging for eighteen cases.  In this case, the parties discussed in advance and agreed that uses beyond the specific case and phone (or electronic device) being shot would require

additional permissions and compensation.  In the instance of the Live Event, behind-the-scenes social media footage was the specific purpose discussed (rather than a specific phone and case).

63.     Yet of the 18 cases in Table 1, all but one of the cases (the Samsung Galaxy S8) prominently used one or more images that were shot for another case/phone combination.  This use outside the scope of any potential license is an infringement, and this Outside-Scope Infringement is pursued from May 2016 onward (and at the least, no later than starting August 24, 2017 onward).

64.     The packaging is of critical importance to making the sale of the case. L'Heureux's photographic services were retained in the first instance because he had a demonstrated ability to capture the outdoor and extreme sports lifestyle in picture.  Otter and LifeProof are able to charge premium prices despite by 2017 the market having been saturated by other all-weather, waterproof, shockproof, etc. phone cases in large part because LifeProof (and to some extent Otter for its Otter-branded cases) have used the consistent image conveyed by L'Heureux's photography to create a feeling among consumers that makes them feel at-home and a part of the outdoor and extreme sports lifestyle.

65.     The phone case resonates with this part of the consumer's use, whether or not the consumer spends all, most or some of the time with their LifeProof case in the actual elements depicted by the photos.  As marketers have found, the imagery associated with products is so powerful that it overpowers even inconsistent written messaging.  For example, if there is an extreme sports scene on the product packaging with prominent script that reads "for desk use only," the viewer's mind will disregard the incongruent messaging for the look and feel of the photograph.

66.     The product packaging represents perhaps the single greatest opportunity to convey a look and feel through the L'Heureux Works, a look and feel that drives the purchase decision by a consumer, because offline in-person purchases account for at least 71% of case purchases (e.g. no more than 29% online).  https://www.grandviewresearch.com/industry-analysis/mobile-phone-protective-cover-market.  These cases are in sections that offer many other substitutes, many at much lower prices.  But sales of the infringing eighteen cases in Table 1 drove estimated combined sales of over $180 million (not even looking at the entire infringement period), with profit margins between 30 and 50%, for minimum profits on infringement of $54 million.  Thus, the L'Heureux Works drove the sales of at least the 18 infringing cases, including other revenues realized by the Defendants.

67.     Of the 29% online sales, many of these websites (including LifeProof's online store) used and continue to use the L'Heureux Works prominently on unauthorized product pages, to drive sales in the same fashion as in-store purchases.  But even looking just at the 71% in-store sales, at current estimates, Otter and LifeProof generated **$128 million in sales and at least $38 million in profits** from use of the L'Heureux Works on the infringing case.  No matter how those profits are reasonably apportioned (if apportioned at all), Otter and LifeProof have been raking in the money off of the indiscriminate use of the L'Heureux Works while never once approaching L'Heureux or STN to obtain such broader usage rights.

68.     Capture Eleven's investigation revealed that Otter and LifeProof went far beyond just unauthorized product packaging, and also used the L'Heureux Works for general websites images, in trade shows, in a large banner at the X-Games, in social media – much divorced from any particular product.  This allowed them to convey the look and feel of the L'Heureux Works to obtain value, increased sales, and a larger consumer base in general, even if

not specifically directed at a particular case or product.  Thus, Otter and LifeProof have enjoyed yet further profits from their infringement, revenues obtained by use of the infringing images.

69.     Below are further details with respect to each of the eighteen cases that use at least one or more of the L'Heureux Works prominently and without authorization on the packaging for cases that were outside the scope of any arguable right of usage Otter or LifeProof enjoyed:

**USE OUTSIDE THE SCOPE FOR REGISTERED PHOTO #1**

70.     One of the L'Heureux Works owned by Capture Eleven is a photograph entitled "Dirtbike 1_11:2016_L_9498.jpg" ("Registered Photo #1").

71.     Otter and LifeProof retained STN to shoot for a live event broadcast and behind the scenes social media in November 2016 in California.

72.     Before the shoot, Otter and LifeProof emailed STN and stated "Thursday November 3rd: We will be shooting some behind the scenes photos and videos with mechanics along with some interviews. . . . Friday November 4th: Live Event, capturing everything that is going on behind the scenes during and before the broadcast."

73.     Despite only having at most permission to (arguably) use STN's photographs from that shoot, including Registered Photo #1, for a live event broadcast and near-contemporaneous behind the scenes social media, Otter and LifeProof impermissibly used – and continue to use –  Registered Photo #1 on the permanent case packaging for numerous products, including but not limited to the following:

|   | Product Image | Scope of Image | Infringing Case Product Name | Device Name |
|---|---|---|---|---|
| 1 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event broadcast (Persiscope app) and behind the scenes | LifeProof FRE | iPhone 8+ |

| | | social media, not for permanent case packaging | | |
|---|---|---|---|---|
| 2 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | iPhone 7+ |
| 3 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | iPhone 8 |
| 4 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | iPhone 7 |
| 5 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | iPhone X |
| 6 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | Samsung Galaxy S9 |
| 7 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | Samsung Galaxy S9+ |
| 8 | Dirtbike 1_11:2016_L_9498.jpg (Registered Photo #1) | Shot for specific use as Live Event (Persiscope app) broadcast and behind the scenes social media, not for permanent case packaging | LifeProof FRE | Google Pixel 2 |

74.     No usage rights were obtained from STN, L'Heureux, or Capture Eleven to use Registered Photo #1 for any of these products, and these unauthorized uses constitute infringement.  A true and correct copy of the infringed photos alongside photographs of the infringing product packages is attached as Exhibit E.

**USE OUTSIDE THE SCOPE FOR REGISTERED PHOTO #46**

75.     One of the L'Heureux Works owned by Capture Eleven is a photograph entitled "Gazing girl with longboard San Diego_5:2017_8V2A1116.jpg" ("Registered Photo #46").

76.     In May 2017, Otter and LifeProof retained STN to shoot lifestyle and product shots for the Samsung S8 and FRE Power.

77.     Before the shoot, Otter and LifeProof emailed STN a deck for the shoot and stated "[t]he focus of the shoot will be GS8 with a sprinkling of FRE Power."

78.     Despite only having at most permission to (arguably) use STN's photographs from that shoot, including Registered Photo #46, for the FRE Power's Galaxy S8 model, Otter and LifeProof impermissibly used – and continue to use –  Registered Photo #46 on the permanent case packaging for other products, including but not limited to the following:

|   | Product Image | Scope of Image | Infringing Case Product Name | Device Name |
|---|---|---|---|---|
| 1 | Gazing girl with longboard San Diego_5:2017_8V2A1116.jpg (Registered Photo #46) | Shot for Spring It Galaxy S8 / FRE Power, not NUUD and not iPhone 8 | NUUD | iPhone 8 |
| 2 | Gazing girl with longboard San Diego_5:2017_8V2A1116.jpg (Registered Photo #46) | Shot for Spring It Galaxy S8 / FRE Power, not NUUD and not iPhone 8 | NUUD | iPhone 8+ |

79.     No usage rights were obtained from STN, L'Heureux, or Capture Eleven to use Registered Photo #46 for any of these products, and these unauthorized uses constitute infringement.  A true and correct copy of the infringed photos alongside photographs of the infringing product packages is attached as Exhibit F.

**USE OUTSIDE THE SCOPE FOR REGISTERED PHOTO #59**

80.     One of the L'Heureux Works owned by Capture Eleven is a photograph entitled "Wall-leaping men San Diego_5:2017_8V2A4309.jpg" ("Registered Photo #59").

81.     In May 2017, Otter and LifeProof retained STN to shoot lifestyle and product shots for the Samsung S8 and FRE Power in downtown San Diego.

82.     Despite only having at most permission to (arguably) use STN's photographs from that shoot, including Registered Photo #59, for the FRE Power's Galaxy S8 model, Otter and LifeProof impermissibly used – and continue to use –  Registered Photo #59 on the permanent case packaging for other products, including but not limited to the following:

|   | Product Image | Scope of Image | Infringing Case Product Name | Device Name |
|---|---|---|---|---|
| 1 | Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) | Shot for Spring It Galaxy S8 / FRE Power, not SLAM and not iPhone 7 | SLAM | iPhone 7 |
| 2 | Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) | Shot for Spring It Galaxy S8 / FRE Power, not SLAM and not iPhone 7 | SLAM | iPhone 7+ |
| 3 | Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) | Shot for Spring It Galaxy S8 / FRE Power, not SLAM and not iPhone 8 | SLAM | iPhone 8 |
| 4 | Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) | Shot for Spring It Galaxy S8 / FRE Power, not SLAM and not iPhone 8 | SLAM | iPhone 8+ |
| 5 | Wall-leaping men San Diego_5:2017_8V2A4309.jpg (Registered Photo #59) | Shot for Spring It Galaxy S8 / FRE Power, not SLAM and not iPhone X. | SLAM | iPhone X |

83.     No usage rights were obtained from STN, L'Heureux, or Capture Eleven to use Registered Photo #59 for any of these products, and these unauthorized uses constitute

infringement.  A true and correct copy of the infringed photos alongside photographs of the infringing product packages is attached as Exhibit G.

### USE OUTSIDE THE SCOPE FOR REGISTERED PHOTO #66

84.     One of the L'Heureux Works owned by Capture Eleven is a photograph entitled "Skateboarder skateboarding_11:2016_L__0423.jpg" ("Registered Photo #66").

85.     In November 2016, Otter and LifeProof retained STN to shoot lifestyle and product shots for the iPhone 7 in Oceanside, California.

86.     Despite only having at most permission to (arguably) use STN's photographs from that shoot, including Registered Photo #66, for the SLAM's iPhone 7's model, Otter and LifeProof impermissibly used – and continue to use –  Registered Photo #66 on the permanent case packaging for other products, including but not limited to the following:

| | Product Image | Scope of Image | Infringing Case Product Name | Device Name |
|---|---|---|---|---|
| 1 | Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66) | Shot for iPhone 7, not iPhone 8 | SLAM | iPhone 8 |
| 2 | W Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66) | Shot for iPhone 7, not iPhone 8 | SLAM | iPhone 8+ |
| 3 | W Skateboarder skateboarding_11:2016_L__0423.jpg (Registered Photo #66) | Shot for iPhone 7, not iPhone X | SLAM | iPhone X |

87.     No usage rights were obtained from STN, L'Heureux, or Capture Eleven to use Registered Photo #66 for any of these products, and these unauthorized uses constitute infringement.  A true and correct copy of the infringed photos alongside photographs of the infringing product packages is attached as Exhibit H.

**USE OUTSIDE THE SCOPE FOR REGISTERED PHOTOS #81 AND #96**

88.     Two of the L'Heureux Works owned by Capture Eleven are photographs entitled "Running woman Vancouver_8:2017_8V2A3077.jpg" ("Registered Photo #96") and Bikerider (in background) Vancouver_8:2017_8V2A0538.jpg (Registered Photo #81).

89.     In August 2017, Otter and LifeProof retained STN to shoot lifestyle and product shots for the *iPhone* SLAM and NEXT cases in Vancouver, Canada.

90.     Despite only having permission to (arguably) use STN's photographs from that shoot, including Registered Photo #96 and Registered Photo #81, for SLAM and NEXT cases for iPhone, Otter and LifeProof impermissibly used – and continue to use –  Registered Photo #96 and Registered Photo #81 on the permanent case packaging for other products, including but not limited to the following:

| | Product Image | Scope of Image | Infringing Case Product Name | Device Name |
|---|---|---|---|---|
| 1 | Running woman Vancouver_8:2017_8V2A3077.jpg (Registered Photo # 96)<br><br>Bikerider (in background) Vancouver_8:2017_8V2A0538.jpg (Registered Photo #81) | Shot for iPhone SLAM and NEXT | SLAM | Samsung Galaxy S9 |
| 2 | Running woman Vancouver_8:2017_8V2A3077.jpg (Registered Photo # 96)<br><br>Bikerider (in background) Vancouver_8:2017_8V2A0538.jpg (Registered Photo #81) | Shot for iPhone SLAM and NEXT | SLAM | Samsung Galaxy S9+ |

91.     No usage rights were obtained from STN, L'Heureux, or Capture Eleven to use Registered Photo #96 or Registered Photo #81 for any of these products, and these

unauthorized uses constitute infringement.  A true and correct copy of the infringed photos

alongside photographs of the infringing product packages is attached as Exhibit I.

92.     In addition, Otter and LifeProof have used, and continue to use,

L'Heureux Works for its online advertisements, tradeshow booths, in-store displays and retail

content, magazine ads, event billboards and promotional materials, and social media.  No usage

rights were obtained for these uses from STN, L'Heureux, or Capture Eleven, and these

unauthorized uses also constitute infringement.

**OTTER AND LIFEPROOF ARE ALSO LIABLE FOR INDIRECT INFRINGEMENT ("INDIRECT INFRINGEMENT")**

93.     Further, as to the downstream infringement by third-party retailers selling

or offering for sale products with the infringing images, Otter and LifeProof knowingly provided

material contribution to that infringement.  For example, the cases in the infringing packaging

were simply resold and in the same state as provided to retailers through Otter and LifeProof's

supply.  The packaging was a critical part of the retail sales process, and set the cases apart from

the competition.

94.     Otter and LifeProof also had the ability to control this downstream

infringement by supplying packaging for the cases which did not have the unauthorized

L'Heureux Works prominently displayed on them, and derived a direct financial and commercial

benefit from downstream resellers selling the cases with infringing packaging, including (on

information and belief) (1) through provisions with retailers providing for returns in the event

that such items were not sold, and (2) additional purchases of further product due to the

successful sell-through of the initial infringing products.

95.     Upon information and belief, Otter and LifeProof have infringed Capture

Eleven's copyright in other ways, the scope and breadth of which infringing activities will be

ascertained during the course of and through the discovery process.  To the extent additional images are found to be infringing, Capture Eleven intends that they ultimately be included in this suit for the entire case and controversy between the parties, and will register such images so as to allow them to be pursued in this case.

**<u>COUNT I – ALL-USES INFRINGEMENT</u>**
**Copyright Infringement**
**Violation of 17 U.S.C. §§ 106, 501 *et seq*.**

96.     Capture Eleven repeats and re-alleges each and every allegation in this Complaint as though fully set forth herein.

97.     Defendants made unauthorized use of the L'Heureux Works for product packaging and other usage –including, but not limited to, website, trade shows, and social media. These uses go beyond the specific cases and specific phones for which they were shot.

98.     Otter and LifeProof's indiscriminate use of the L'Heureux Works was not authorized or permitted by L'Heureux or STN and Otter and LifeProof knew this fact.  Further, Otter and LifeProof did not attempt to advise STN of such use.

99.     No implied license exists, and thus all uses by Otter and LifeProof from August 24, 2017 onward are unauthorized infringements on that basis.

100.     This includes without limit eighteen infringing product packaging and product-specific web content for cases covering nine different IPhone, Samsung Galaxy, and Google Pixel models which has resulted in over $100 million in infringing sales.

101.     Otter and LifeProof's acts complained of herein constitute infringement of Capture Eleven's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

## COUNT II – POST-TERMINATION INFRINGEMENT
### Copyright Infringement
### Violation of 17 U.S.C. §§ 106, 501 *et seq*.

102.    Capture Eleven repeats and re-alleges each and every allegation in this Complaint as if set forth herein.

103.    Any possible implied license between STN and/or L'Heureux, on the one hand, and Defendants, on the other hand, as to the L'Heureux Works was revocable.

104.    If the Court or trier of fact finds there is an implied license, Capture Eleven pleads infringement and unauthorized use in the alternative for post-termination use, for an infringement period of June 1, 2018 onward.  Such unauthorized usage took place, whether or not Otter and LifeProof are correct in their suggestion that any implied license was intended to be of indefinite duration.

105.    If Otter and LifeProof's allegation is correct, namely that they obtained an implied license of indefinite duration and unlimited scope (or scope large enough to encompass the infringing uses here), then such usage rights were still terminable and properly terminated on May 31, 2018 both because: (1) the entire implied license was revocable or, in the alternative, (2) because at least the uses beyond the specific product shot (or Live Event and related contemporaneous social media in the case of the November 2016 dirt bike photo shoot) lacked consideration and were revocable at-will.

106.    Otter and LifeProof's investment in the photos was neither substantial or great compared to the benefit received from use of the photos, and there are no special considerations that would deviate from the normal rule of at-will termination.

107.    The May 31, 2018 termination constituted reasonable terms and express notice of termination, regardless of any such potential implied license, and any subsequent usage was infringing.

108.     Sales of the infringing cases in Table 1 drove estimated sales of over $180 million, with profit margins between 30 and 50%, for minimum profits on infringement of $54 million.

109.     In addition to the unauthorized product packaging, Otter and LifeProof also used the L'Heureux Works for general website images, in trade shows, in a large banner at the X-Games, and in social media, allowing Otter and LifeProof to enjoy even further profits from their infringement.

110.     Otter and LifeProof's acts complained of herein constitute infringement of Capture Eleven's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

## COUNT III – OUTSIDE-SCOPE INFRINGEMENT
### Copyright Infringement
### Violation of 17 U.S.C. §§ 106, 501 *et seq.*

111.     Capture Eleven repeats and re-alleges each and every allegation in this Complaint as if set forth herein.

112.     Otter and LifeProof obtained pictures from STN and L'Heureux under what was (at most) the express and implied restrictions of use, but then went on to make much broader usage than discussed, without even attempting to provide L'Heureux notice or negotiate the fair price for such usage.  This was despite the parties having expressly discussed the need to so limit the uses absent further agreement and excluding any such use rights absent such further agreement, and consistent with the parties' course of conduct and (disclosed) practice in connection with the setting up and carrying out of each photo shoot by L'Heureux or STN.

113.     All but one of the cases listed in Table 1 above prominently used one or more images that were shot for another case and/or phone combination.

114.     This use outside the scope of any potential license is an infringement.

115.     This Outside-Scope Infringement is pursued for infringement occurring from May 2016 onward (and at the least, from August 24, 2017 onward).

116.     Sales of the infringing cases in <u>Table 1</u> drove estimated sales of over $180 million, with profit margins between 30 and 50%, for minimum profits on infringement of $54 million.

117.     In addition to the unauthorized product packaging, Otter and LifeProof also used the L'Heureux Works for general website images, in trade shows, in a large banner at the X-Games, and in social media, allowing Otter and LifeProof to enjoy even further profits from their infringement.

118.     Otter and LifeProof's acts complained of herein constitute infringement of Capture Eleven's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

## COUNT IV – INDIRECT INFRINGEMENT
### Copyright Infringement
### Violation of 17 U.S.C. §§ 106, 501 *et seq*.

119.     Capture Eleven repeats and re-alleges each and every allegation in this Complaint as though fully set forth herein.

120.     Otter and LifeProof knowingly provided material contribution to downstream infringement in that the cases in packaging were simply resold and in the same state as provided to retailers through Otter and LifeProof's supply.

121.     Otter and LifeProof had the ability to control this downstream infringement by supplying packaging for the cases which did not have the unauthorized L'Heureux Works prominently displayed on them.

122.    On information and belief, Otter and LifeProof also supplied the infringing images and artwork to downstream retailers for use in selling the infringing cases, including in marketing and promotional materials extending beyond the packaging.

123.    Otter and LifeProof derived a direct financial and commercial benefit from downstream resellers selling the cases with infringing packaging, including on information and belief (1) through provisions with retailers providing for returns in the event that such items were not sold, and (2) additional purchases of further product due to the successful sell-through of the initial infringing products.

124.    As a direct and proximate cause of the contributory and vicarious infringement by Otter and LifeProof of Capture Eleven's copyright and exclusive rights under copyright, Capture Eleven is entitled to damages and Defendant's profits pursuant to 17 U.S.C. § 504.

## PRAYER FOR RELIEF

WHEREFORE, Capture Eleven demands the following relief:

A.  A judgment in favor of Capture Eleven and against Otter and LifeProof on all counts;

B.  For Capture Eleven's actual damages, in an amount to be determined at trial;

C.  For an accounting by Otter and LifeProof of their activities in connection with their infringement of Capture Eleven's copyrights, as well as of the gross profits and revenue attributable to their infringement;

D.  For Otter and LifeProof's direct and indirect profits attributable to their infringements, including but not limited to those direct and indirect profits derived from the use of the infringing materials in an amount to be determined at trial;

E.  For both temporary and permanent injunctions barring Otter and LifeProof, their agents, employees and/or servants from infringing Capture Eleven's copyrights in any manner whatsoever;

F.  For attorneys' fees under, among others, 17 U.S.C. § 505;

G.  For prejudgment interest; and

H.  For such other relief as the Court determines to be just and equitable.


Dated: August 24, 2020                    Respectfully submitted,


                                          /s/ Ben L. Wagner
                                          TROUTMAN PEPPER HAMILTON
                                          SANDERS LLP
                                          Ben L. Wagner, Esq.
                                          11682 El Camino Real
                                          Suite 400
                                          San Diego, CA 92130

                                          TROUTMAN PEPPER HAMILTON
                                          SANDERS LLP
                                          Erica H. Dressler, Esq.
                                          3000 Two Logan Square
                                          Eighteenth and Arch Streets
                                          Philadelphia, PA  19103-2799
                                          *Court Admission Forthcoming*

                                          *Attorneys for Plaintiff Capture Eleven, LLC*

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues triable of right by a jury.


Dated: August 24, 2020                                TROUTMAN PEPPER HAMILTON
                                                      SANDERS LLP

                                                      By:  /s/ Ben L. Wagner
                                                            Ben L. Wagner, Esq.

                                                      *Attorneys for Plaintiff Capture Eleven, LLC*

**CERTIFICATE OF SERVICE**

I, Ben L. Wagner, hereby certify that on August 24, 2020 a true and correct copy of the foregoing Plaintiff Capture Eleven, LLC's Complaint was electronically filed with the Court's ECF system and served on all counsel of record who are deemed to have consented to electronic service.

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Ben L. Wagner
 Ben L. Wagner, Esq.

*Attorneys for Plaintiff Capture Eleven, LLC*