IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cv-02551-CNS-KLM

THE CAPTURE ELEVEN GROUP,
a California corporation,

      Plaintiff,

v.

OTTER PRODUCTS, LLC,
a Colorado limited liability company, and
TREEFROG DEVELOPMENTS, INC. a Delaware corporation.

      Defendants.

---

**PLAINTIFF THE CAPTURE ELEVEN GROUP'S MOTION TO STRIKE
DEFENDANTS' PURPORTED REBUTTAL EXPERT REPORTS**

---

Pursuant to the Court's January 10, 2023 Order (Dkt. 156), Plaintiff The Capture Eleven Group ("Plaintiff") respectfully moves to strike Defendants Otter Products, LLC and Treefrog Developments, Inc.'s (collectively "Defendants") purported "rebuttal" expert reports. Specifically, Plaintiff seeks to strike (1) the Expert Report of Robert Zeithammer served on December 12, 2022 ("the Zeithammer report") as violating both the one expert per subject matter and rebuttal rules; (2) the Rebuttal Expert Report of Gary Elsner served on December 12, 2022 ("the Elsner report") as violating the one expert per subject matter rule; and (3) all portions of the Expert Report of Kevin M. Arst served on December 12, 2022 ("the Arst report") that rely on or mention the opinions of Zeithammer and/or Elsner. In the alternative, if the Court does not strike Elsner's actual damages opinions, Plaintiff seeks to strike the Zeithammer report in its entirety for the same reasons above, and all portions of the Arst report that relate to actual damages for violating the one expert per subject matter rule.[1]

Defendants' expert reports should be stricken for multiple reasons. First, the Zeithammer report – which does not so much as mention Plaintiff's expert David Drews or his opening expert report – should be stricken in its entirety because it sets forth affirmative rather than rebuttal testimony and, thus, is untimely. Defendants' late disclosure of non-rebuttal survey evidence was neither substantially justified nor harmless. The Arst report should similarly be stricken as an untimely and/or duplicative "rebuttal" report with respect to all opinions regarding actual damages, because Mr. Arst explicitly states that he is not providing a rebuttal of Mr. Drews'

---

[1] As Plaintiff's counsel mentioned during the January 10, 2023, hearing before Magistrate Judge Mix, Plaintiff intends to file a separate *Daubert* motion concerning one or more of Defendants' experts at the appropriate time. Moreover, Plaintiff reserves its rights to file motions concerning expert discovery by the date set in the scheduling order.

actual damages opinions. Again, Defendants' untimely submission of *admittedly n*on-rebuttal opinions regarding actual damages is neither substantially justified nor harmless.

The Zeithammer and Elsner reports should also be stricken because they violate the one report per subject matter expertise rule set forth in the Scheduling Order in this case. Specifically, both the Zeithammer report and the Arst report offer opinions on profit disgorgement/apportionment, including opinions on the very same attributes and analysis of the same purportedly corroborating internal documents produced by Defendants. The opinions concern the same subject matter, directly overlap, and thus violate the Scheduling Order. Similarly, both the Arst and Elsner reports set forth opinions on actual damages. Both reports consider and opine on the same factors in light of the same overlapping facts, offer overlapping opinions regarding the exact same licenses, and offer opinions regarding "comparable licenses." Thus, only one of these reports regarding actual damages can stand. Finally, all portions of the Arst report that mention or rely upon the improper Zeithammer and Elsner reports should also be stricken, since they rely on excluded opinions.

Accordingly, Plaintiff respectfully requests that the Court grant its motion.

## I.     FACTUAL BACKGROUND

### A.     The Scheduling Order Set Deadlines for Opening and Rebuttal Expert Reports and Limited Each Side to One Expert Per Subject Matter Expertise

On November 4, 2020, Magistrate Judge Mix issued the initial Scheduling Order in this case, which set forth dates for opening and rebuttal expert reports. *See* Dkt. 32 at 8. Following amendments, the most recent Scheduling Orders required the parties to make expert witness disclosures on November 14, 2022, rebuttal expert disclosures on December 12, 2022, and

second rebuttal expert disclosures on January 6, 2023. *See* Dkt. 131 and Dkt. 137.[2] The second rebuttal expert disclosure date was set following a stipulation in which the parties provided it would be directed "[s]olely to addressing matters for which the party does not have the burden of proof, but which the opposing party only opined on in its ***rebuttal*** expert disclosure (e.g., this would include plaintiff's rebuttal to defendant's expert testimony in defendant's rebuttal expert disclosure concerning deductible expenses and "elements of profit attributable to other factors" including apportionment")." [3] Dkt. 136. The stipulation in no way alleviated Defendants from their duty to timely disclose ***non-rebuttal*** testimony on November 14, 2022.

The Scheduling Order includes explicit limitations on expert reports, stating "No more than four experts per side absent further leave of court. Limit of one expert per side per area of subject matter expertise." Dkt. 32 at 8.

### B. Defendants Respond to Plaintiff's Single Opening Expert Report with Three Purported "Rebuttal" Expert Reports On Overlapping Subject Matter

On November 14, 2022, Plaintiff timely served a single opening expert report by Mr. David Drews, addressing damages ("the Drews report"). *See, e.g.*, Declaration of Howard N. Wisnia ("Wisnia Decl.") at ¶ 2, Ex. 1 at 1 ("I have been asked to render opinions on the appropriate level of damage and other monetary recoveries to be awarded to Plaintiff for the unauthorized use of the Infringed Works by the Defendants")[4]. The Drews report set forth opinions regarding "the actual damages suffered by Plaintiff," under 17 U.S.C. §504(b) and "the

---

[2] On January 18, 2023, Plaintiff filed a Motion to Modify the Scheduling Order to Extend the Second Rebuttal Expert Disclosure Deadline by Two Weeks (Dkt. 166), to January 20, 2023. That motion remains pending.

[3] All emphasis in this document is added, unless otherwise noted.

[4] All exhibits are attached to the Wisnia Decl.

net sales attained by Defendants" due to their infringement (e.g., gross revenue), and "the net revenue after deducting discounts and allowances" from such net sales to meet the *sole* burden Plaintiff has to prove profit disgorgement under the Copyright Act, 17 U.S.C. §504(b)[5]. Ex. 1. at 3-4 (section entitled "Summary of Opinions"). The Drews report did not include any methodology relating to a survey nor did Mr. Drews offer any opinions regarding a survey. Ex. 1.

Also on the November 14, 2022 date for opening expert reports, Defendants served a single opening expert report by Mr. Elsner concerning their implied/actual license defense. Wisnia Decl. at ¶ 3.

On December 12, 2022, Defendants responded to Plaintiff's single opening expert report by serving *three* alleged rebuttal expert reports to the Drews report from *three* separate experts. *Id*. at ¶ 4. First, Defendants served a 162-page report of Mr. Arst, which included 82 pages of report and numerous schedules and exhibits. Ex. 2. Mr. Arst offers opinions regarding Plaintiff's "claims for monetary relief." *Id.* at 2. He sets forth extensive opinions regarding both actual damages and profit disgorgement (including expenses and apportionment). *Id*. at 19-41 (Section 7 entitled "Capture Eleven's Claim for Profit Disgorgement Damages") and 41-78 (Section 8 entitled "Actual Damages").

Second, Defendants served a 145-page report of Mr. Elsner, which included 49 pages of report and 43 exhibits. Ex. 3. Mr. Elsner, like Mr. Arst, offers opinions on actual damages –

---

[5] §504(b) reads as follows: "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. ***In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue***, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

despite the Scheduling Order prohibition on more than one expert per subject matter expertise. *See, e.g., id*. at 7-8 (summarizing his opinions that he "disagree[s] with David Drews' opinions relating to comparable licenses used in his calculation of any additional license fees that might be due" to Plaintiff and disagreeing with Mr. Drews' "opinion for Actual Damages"). He offers opinions that Mr. Drews' comparable license opinions are not appropriate, and discusses what he believes are the most comparable licenses. *Id*.

Finally, Defendants served an 83-page report of Dr. Zeithammer, which included 59 pages of report and various exhibits. Ex. 4. Dr. Zeithammer does not talk about Mr. Drews' report even a single time (despite purporting to be a "rebuttal" report), let alone address Mr. Drews' opinions, and offers opinions regarding subject matter that directly overlaps with the subject matter addressed by Mr. Arst regarding profit disgorgement/apportionment. *Id*., *e.g.*, at 16 (providing opinions regarding similar attributes of the infringing products about which Arst provided opinions), 24-27 (opining on Defendant's internal documents similarly to opinions provided by Arst), 31-32 (opining on same list of attributes that Arst opines about), and 55-56 (offering opinions on evidence from the record that overlaps with Arst opinions). Dr. Zeithammer offers opinions regarding a survey that he conducted more than a year prior to the Drews report, in Fall 2021, despite the fact that Plaintiff's expert did not provide survey opinions or conduct a survey. *Id*. at 11-12.

## II.     LEGAL STANDARD

Fed.R.Civ.P. 26(a)(2)(D) governs the timing of expert report disclosures, and states, "A party must make these disclosures at the times and in the sequence that the court orders." The purpose of Rule 26(a) is to promote full disclosure of the facts and to prevent trial by ambush. *Baumann v. American Fam. Mut. Auto. Ins. Co*., 278 F.R.D. 614, 615 (D. Colo. 2012). "Fed. R. Civ. P. 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is 'intended solely

-5-

to <u>contradict or rebut</u> evidence on the ***same subject matter identified' by an initial expert witness***." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 U.S. Dist. LEXIS 53488, 2016 WL 1597529, at *2 (D. Colo. Apr. 21, 2016) (emphasis in original) (quoting *TC Sys. Inc. v. Town of Colonie, NY*, 213 F. Supp. 2d 171, 179 (N.D.N.Y. 2002)). Further, "[r]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Id*. (citation omitted).

Fed. R. Civ. P. 37(c)(1) provides that where a party fails to make a disclosure required by Rule 26(a), that a failure to comply with Fed.R.Civ.P. 26(a) precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-Am. Tablewares, Inc. v. Mogi Trading Co*., 100 F.3d 1353, 1363 (7th Cir. 1996)). "The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1)." *Sender*, 225 F.R.D. at 655 (citing *Nguyen v. IBP, Inc*., 162 F.R.D. 675, 680 (D. Kan. 1995)). While the district court does not need to make explicit findings as to substantial justification or harmlessness, the Tenth Circuit has advised that "the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply*, 170 F.3d at 993.

### III.     ARGUMENT

#### A.     The Zeithammer Report Is Not a Rebuttal Report, Nor Is the Arst Report to the Extent It Addresses Actual Damages; Thus, Both Are Untimely

Neither the Zeithammer report, nor the Arst report as it relates to actual damages, are rebuttal reports. Nonetheless, these reports were not disclosed until December 12, 2022, the date for *rebuttal* disclosures. They should be stricken for this reason alone.

Fed.R.Civ.P. 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter" identified by an initial expert witness. *See Spring Creek*, 2016 WL 1597529 at *2; *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is the explain, repel, contradict, counteract or disprove evidence of the adverse party"). But Zeithammer's report is not a rebuttal report. It sets forth opinions on a survey that was conducted *more than a year before* Plaintiff served the expert disclosure that it ostensibly rebuts. Moreover, the Zeithammer report neither references Mr. Drews nor his report —let alone rebuts Mr. Drews report in any way. Rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the opposing side's experts. *Id*.at *3. Expert reports that simply purport to address the same general subject matter as a previously submitted report, and worse still employ a methodology (here, a survey) that was not used at all in the prior report, and do not directly contradict or rebut the actual contents of that prior report, do not qualify as a proper rebuttal or reply reports. *Id*. Zeithammer's report is not a rebuttal in any way.

Nor are the Arst report's opinions on actual damages a rebuttal. Remarkably, *Arst says so himself*:

> I understand that Mr. Gary Elsner, an industry expert in the field of commercial photo licensing and assignment, as retained by Otter to respond to

> Mr. Drews' opinions and conclusions regarding actual damages based on Mr. L'Heureux's historical engagements.
>
> ***In contrast, I have not been asked to respond directly to Mr. Drews' actual damages opinions***. I have been asked to provide my own independent opinions about actual damages that may be adequate to compensate Capture Eleven in the event that the fact finder determines Otter's use of the Subject Images was infringing.

Ex. 2 at 41. Thus, Mr. Arst directly states that he understands that Mr. Elsner – not himself – is providing a rebuttal to Mr. Drews' opinions regarding actual damages. Mr. Arst further explicitly states that *he has not been asked to respond directly to Mr. Drews' actual damages opinions*. And Mr. Arst also states that he is providing his own independent opinions (as opposed to contradicting or rebutting Mr. Drews' opinions, which he says he is not doing). Thus, Mr. Arst *clearly admits* that he is not providing a rebuttal opinion regarding actual damages. All opinions in the Arst report regarding actual damages are thus untimely and should have been disclosed on December 12, 2022. Thus, Section 8 at pages 41-82 of his report (Ex. 2) should be struck.

Since neither the Zeithammer report nor the Arst report as it relates to actual damages are rebuttal reports, they were untimely. As Defendants' untimely disclosure of non-rebuttal reports was neither substantially justified nor harmless, they should be stricken. In fact, the *Woodworker* factors support this result. The untimely disclosures are not harmless, and in fact substantially prejudiced and surprised Plaintiff. It was reasonable for Plaintiff to conclude from the parties' repeated meet and confers regarding expert rebuttal reports (and Defendants' failure to mention that they would be submitting three reports or a potential survey report during those discussions) that Defendants would only be providing a rebuttal to Plaintiff's opening report on damages. Moreover, Plaintiff's surprise at Defendants' submission of a conjoint survey-related report was reasonable and to be expected, particularly since such opinions are nearly unheard of in copyright cases – which Zeithammer himself points out in his report. Plaintiff was further

substantially prejudiced by incurring additional attorney and expert time and costs, which prejudice was particularly severe due to the holiday period and the difficulties in finding an expert at that time. In fact, Defendants exacerbated this prejudice (rather than showing an ability to cure it, as considered in *Woodworker*) because Defendants wholly refused to provide *any* extension of time to rebut the unexpected reports, instead requiring Plaintiff to engage in costly motion practice while still trying to prepare rebuttals to the untimely reports. *See generally,* Plaintiff's motion to modify the scheduling order to extend second expert rebuttal disclosure deadline by two weeks, Dkt. 166.

Defendants' late disclosure of non-rebuttal opinions is also not substantially justified, and in fact shows bad faith and willfulness. With respect to Zeithammer, he performed the survey at issue *more than a year* prior to the deadline for opening expert disclosures, yet it was never disclosed or even suggested to Plaintiff. While Defendants may argue that his survey may be relied upon by another expert in determining profit apportionment under §504(b) that does not make the survey report itself a rebuttal. Rather, if Defendants' rebuttal witness Arst needed to rely on the Zeithammer survey, then the Zeithammer report (and/or the survey itself) should have been disclosed with the initial reports or earlier. In fact, Defendants never suggested (let alone disclosed) Zeithammer or the existence of his survey at any time during the parties' extensive meet and confers regarding staging of expert disclosures, despite the fact that Defendants knew that conjoint survey opinions in copyright cases are extremely rare (because Zeithammer himself explicitly emphasizes this in his report). Instead, Defendants waited to serve this entirely unexpected, surprise survey report less than two weeks before Christmas, with any rebuttal due right after the holiday season. Similarly, as to the Arst report, Defendants knowingly and willfully submitted his opinions on actual damages in supposed "rebuttal," when Arst himself

explicitly states in his report that he is not rebutting Drews and that Elsner is in fact doing so. This also shows bad faith. Further showing Defendants' bad faith, they refused any kind of extension when Plaintiff requested relief due to the difficulty in finding a survey expert and preparing rebuttals to the unexpected and duplicative Zeithammer and Arst opinions during the holidays.[6]

### B. The Zeithammer Report Should Also Be Stricken For Violating the One Expert Per Subject Matter Rule Because It Overlaps With the Arst Report

Both the Zeithammer and Arst reports offer opinions on the same subject matter - profit disgorgement/apportionment. And not only are the Zeithammer and Arst opinions directed to the same subject matter, profit disgorgement/apportionment – which is not allowed under the Scheduling Order – but, in fact, the opinions therein *directly* overlap in numerous respects.

For example, Mr. Arst provides opinions regarding profit disgorgement (including deduction of expenses and apportionment) in Section 7 of his report, entitled "Capture Eleven's Claim for Profit Disgorgement Damages." Ex. 2 at 19-41. This section includes opinions regarding deduction of expenses and apportionment, such as in store sales and alleged lack of nexus. *See, e.g., id*. at 29-39 (sections entitled "Lack of Causal Nexus and Profit Apportionment Based on Factors Contributing to Customer Purchase Decisions for the Products at Issue" and "Profit Apportionment – In-Store Sales"). There, Mr. Arst sets forth his *own* opinions on the "elements of profit attributable to factors other than the alleged wrongful acts." *Id*. Yet Mr. Arst then relies on Dr. Zeithammer, who *also* provides his own opinions relating to similar subject matter, including opinions regarding customer purchase decisions as they relate to profit

---

[6] *See* Dkt. 166, Plaintiff's co-pending motion to modify the scheduling order regarding these reports, for additional details regarding Defendants' refusal to provide relief to Plaintiff due to the surprise report.

disgorgement/apportionment. *See, e.g., id.* at 39-40 (section entitled "Profit Apportionment – Survey Evidence") and Ex. 4 at 11, 41.

Similarly, both Zeithammer and Arst consider the purported "most important attributes to smartphone case customers" and then each offer cumulative opinions on *the very same attributes or features. Cf., e.g.,* Ex. 2 at 31-32 (setting forth Mr. Arst's opinions regarding certain attributes) and Ex. 4 at 16, 39-40 (setting forth Dr. Zeithammer's opinions regarding a nearly identical list of attributes). Moreover, both Mr. Arst and Dr. Zeithammer offer overlapping opinions regarding why they each believe Defendants' internal documents support a finding that the infringing images were purportedly of little relevance, and opinions on corroborating evidence from the record. *See, e.g.*, Ex. 4 at 24-27 and 55-56 and Ex. 2 at 31-39 (overlapping opinions from Mr. Arst regarding Defendants' internal documents).

For at least these reasons, the Zeithammer report should be stricken for the additional reason that it concerns the same subject matter expertise as the Arst Report and, thus, violates the "one expert per subject matter expertise" rule set forth in the Scheduling Order.

**C.  The Elsner Report Also Overlaps With the Arst Report and Should Be Stricken For Violation of the One Expert Per Subject Matter Rule**

The Arst and Elsner reports also violate the "one expert per subject matter expertise" rule. As explained in Section III(A) above, Mr. Arst tells us this is the case explicitly. Specifically, Mr. Arst explains that both he and Mr. Elsner provide opinions regarding actual damages – but only Mr. Elsner's opinion is in rebuttal to Mr. Drews. Ex. 2 at 41 ("I understand that Mr. Gary Elsner, an industry expert in the field of commercial photo licensing and assignment, as retained by Otter to respond to Mr. Drews' opinions and conclusions regarding actual damages . . . I have been asked provide my own independent opinions about actual damages"); *see also id.* at 41-82 (section in the Arst report entitled "Actual Damages").

-11-

Mr. Arst then conducts his own actual damages analysis, considering the same facts as Mr. Elsner and even explicitly discussing his actual damages opinions in relation to those of Mr. Elsner and the facts Mr. Elsner considered. *See, e.g., id*. at 42 ("I understand Mr. Elsner has opined about the lack of any defined duration of use in the invoices related to the asserted productions being consistent with an intent to grant the resulting licenses in perpetuity. However, for purposes of assessing actual damages, I understand that the inquiry is into the fair market value for a license for the use actually made by the alleged infringer."). As further evidence of the fact that both the Arst and Elsner reports address the same subject matter expertise, Mr. Arst states that he relies on discussions with Mr. Elsner. *Id*. at 44. Both reports consider and opine on the same factors in light of the same overlapping facts, offer overlapping opinions regarding the exact same licenses, and offer opinions regarding "comparable licenses." Thus, only one of these reports regarding actual damages can stand. Moreover, Mr. Arst's section entitled "Factors Influencing Licensing and Usage Fees" overlaps with Mr. Elsner's discussion of the exact same factors. *Cf. id*. at 43-48 and Ex. 3 at 21, 27-30 (Mr. Elsner discussing the same factors relating to usage fees as Mr. Arst, including, *inter alia*, agency productions and sin categories).

Further review of the Arst and Elsner reports further reveals the myriad ways in which they improperly overlap in subject matter. Mr. Arst and Mr. Elsner's reports are also improper under the "one expert per subject matter expertise" rule because they consider and offer opinions regarding the exact same licenses, including opinions regarding whether they are "comparable licenses." *See, e.g*., Ex. 2 at 79 (Mr. Arst discussing comparable licenses) and Ex. 3 at 7-8 (opining that Mr. Drews' comparable license opinions are not appropriate and that the most comparable license is L'Heureux v. Otter). As yet another example of the significant overlapping subject matter, Mr. Arst's section entitled "L'Heureux Historical Agreements with Otter"

-12-

overlaps with Mr. Elsner's discussion of the very same issues. *See* Ex. 2 at 48-51. And just as Mr. Arst discusses his opinion regarding the "L'Heureux engagement with Third Parties" (Ex. 2 at 51) so too does Mr. Elsner. *See, e.g.*, Ex. 4 at 52, 55, 56 and 59 (discussing same third parties).

As these many examples illustrate, both Mr. Elsner and Mr. Arst provide overlapping opinions regarding the same subject matter expertise. They both offer opinions on actual damages, and in fact, Mr. Arst explicitly points out that they both do so. Moreover, the Arst and Elsner reports consider many of the very same facts and offer opinions based on the very same factors. Only one of them can properly offer these opinions on actual damages under the one expert per subject matter expertise rule. And since Mr. Arst explicitly states that he was not asked to rebut Mr. Drews on actual damages, and that Mr. Elsner instead was asked to do so, logically it makes sense that the Arst report should be stricken. In the alternative, the Elsner report should be stricken. But it is clear that one of them has to go.

**IV.    CONCLUSION**

For all of these reasons, Plaintiff respectfully requests that the Court grant its Motion and strike the December 12, 2022 Zeithammer and Elsner reports in their entirety, and strike all portions of the December 12, 2022 Arst report that rely on or mention the stricken opinions of Zeithammer and/or Elsner or, in the alternative, strike the Zeithammer report in its entirety and all portions of the Arst report that relate to actual damages.

-14-

Dated: January 24, 2023

Respectfully submitted,

*/s/Howard Wisnia*
WISNIA PC
Howard N. Wisnia
12636 High Bluff Dr., Suite 400
San Diego, CA 92130
Telephone: (858) 461-0989
Howard@wisnialaw.com

*Attorney for Plaintiff The Capture Eleven Group*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, a true and correct copy of the foregoing was served via electronic filing on the following:

Heather J. Kliebenstein
Joseph W. Dubis, Ph.D.
MERCHANT & GOULD, P.C.
hkliebenstein@merchantgould.com
jdubis@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 332-5300

James W. Beard
MERCHANT & GOULD, P.C.
jbeard@merchantgould.com
1801 California Street, Suite 3300
Denver, Colorado 80202
(303) 357-1670

*Attorneys for Defendants Otter Products, LLC and Treefrog Developments, Inc.*

### **Certificate of Conferral**

Plaintiff's counsel has conferred with defense counsel regarding this motion. Defendant opposes the relief requested.


/s/*Howard Wisnia*
Howard N. Wisnia
**WISNIA PC**
12636 High Bluff Dr., Suite 400
San Diego, CA  92130
858.461.0989
Howard@wisnialaw.com
*Attorney for Plaintiff Capture Eleven, LLC*