IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02551-CNS-KLM
*consolidated with 1:21-cv-00068-CNS-KLM*

THE CAPTURE ELEVEN GROUP, a California corporation,

    Plaintiff/Counter-Defendant,

v.

OTTER PRODUCTS, LLC, a Colorado limited liability company,
TREEFROG DEVELOPMENTS, INC., a Delaware corporation,

    Defendants/Counter-Plaintiffs/Cross-Claimants,

v.

VERITY HOSKINS PRODUCTION, INC.,

    Third-Party Defendant.

---

**ORDER**

---

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 159). For the following reasons, the Court DENIES IN PART and GRANTS IN PART the motion.

**I. BACKGROUND**

Otter Products, LLC (Otter) develops, markets, and sells protective cases for various mobile and handheld devices (ECF No. 23, ¶ 1). TreeFrog Developments, Inc. (TreeFrog) owns the "LifeProof" mark and has licensed it to Otter since 2014, thereby allowing Otter to use the "LifeProof" brand and trade name in commerce (*see* ECF No. 159-16). The Capture Eleven Group

1

(Capture Eleven) is the assignee to any copyrights and related interests arising from work produced by photographer Justin L'Heureux (L'Heureux) and his photography company, Stage Two Nine (STN), to whatever extent such rights are not assigned to others (ECF No. 23, ¶ 6; *see* ECF No. 23-1).

The instant motion arises out of a copyright dispute involving several sets of photographs (Registered Images) L'Heureux took at Otter's behest between 2016 and 2018, most of which were taken after the parties' written contract was terminated. The material undisputed facts relevant to each of Defendants' arguments are set forth below.

## II. LEGAL STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003); Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And generally, where a party raises real issues of credibility, motive, or intent, the matter is unsuited for summary judgment. *Baum v. Gillman*, 648 F.2d 1292, 1295–96 (10th Cir. 1981).

## III.  ANALYSIS

In the instant motion, Defendants seek an order granting summary judgment in their favor as to (1) Capture Eleven's all-uses infringement claim, because L'Heureux granted Otter an implied license for the Registered Images; (2) Otter's counterclaims for declarations of non-infringement and ownership of the Lake Powell Images, because the terms of the parties' then-existing contract dictate that Otter owns those images; and (3) all of Capture Eleven's claims as to TreeFrog, because TreeFrog did not engage in any conduct potentially giving rise to infringement liability. The Court addresses each of these arguments in turn.

### A.  Pursuant to the Court's prior orders, the existence of Otter's implied license presents a genuine factual dispute for trial.

Otter first moves for summary judgment as to Capture Eleven's claim of all-uses infringement, which alleges that "*[n]o implied license exists*, and thus all uses by Otter . . . from August 24, 2017 onward are unauthorized on that basis" (ECF No. 23, ¶ 106 (emphasis added)). Here, Otter argues that the admitted facts establish that L'Heureux granted Otter an implied license to certain minimum, "permitted uses" of the Registered Images, meaning that while the exact *scope* of its implied license remains an issue for trial, the threshold *existence*[1] of its implied license is undisputed (ECF No. 159 at 9–12). Among other arguments, Capture Eleven counters that this Court has already ruled, based on identical evidence and argument presented in Capture Eleven's motion for summary judgment (*see* ECF No. 88), that Otter's implied license affirmative defense is a fact question for the jury (ECF No. 197-1 at 8–11). Here, the Court agrees with Capture Eleven.

---

[1] A license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement. As Otter correctly observes (*see* ECF No. 159 at 9), "the defendant only bears the burden of proving the *existence* of a license granted to it; the plaintiff bears the burden of proving that the defendant's use of a copyrighted work exceeded the scope of that license." *Boatman v. United States Racquetball Ass'n*, 33 F.Supp.3d 1264, 1271 (D. Colo. 2014) (emphasis in original).

3

A brief review of the relevant procedural history appears to be warranted. Previously, Capture Eleven moved for summary judgment, arguing that Otter did not possess an implied license as a matter of law because there was no "meeting of the minds" as to the nature of Otter's "permitted uses" of the Registered Images (ECF No. 88 at 13–15). In response, Otter argued that, at a minimum, L'Heureux intended that Otter could use the Registered Images in certain packaging and marketing materials, and that, maximally, L'Heureux intended that Otter could have unlimited use of the photographs "for its business purpose" (ECF No. 100 at 15–17). In connection with this motion, both parties put forth evidence tending to establish L'Heureux's intent with respect to the Registered Images, including excerpts from his sworn deposition and affidavit declaration (*see, e.g.*, ECF Nos. 89-2, 89-7, 101-4, 101-5, 110-3).

Having both reviewed this evidence and heard oral argument on the matter, the Court denied Capture Eleven's motion (ECF No. 126). In its oral ruling, the Court reasoned that "[w]here questions of intent are involved, summary judgment is, frankly, inappropriate," and that this case fundamentally "centers around the intention of the parties" (ECF No. 127 at 56:8–11; *see id.* at 57:14–17, 60:20–61:1). The Court elaborated that the issue "really comes down to following the cancellation of the ICA [in 2016], did Mr. L'Heureux grant an implied license to Otter to use his photos, and if he did, what was the scope of that license. That will take us through May of '18 . . . [so] we're really dealing with this two-year period" (*id.* at 57:5–9, 57:13; *see id.* at 58:21–59:2). As to the implied license analysis, the Court further explained that under the *Effects* test,[2] the

---

[2] Under the *Effects* test, an implied license exists where "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *I.A.E., Inc., v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (citing *Effects Assocs., Inc. v. Cohen*, 902 F.2d 555, 558–59 (9th Cir. 1990)). "The relevant intent is the licensor's objective intent at the time of the creation and delivery of the [work] as manifested by the parties' conduct." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008).

undisputed facts showed that "the first two elements are met. Mr. L'Heureux was retained to do these photographs. He did them and delivered them. So we're stuck on number three about what was the intent in turning over these pictures to Otter" (*id.* at 59:22–60:3). And as to this third "intent" element, the Court reasoned that "[a] jury must be allowed to consider how these parties were operating, who was controlling what aspect of the photo shoots, and what were their intentions and expectations" (*id.* at 59:19–22).[3]

A short time later, in its Order determining the law applicable to the issue of the revocability of implied licenses, the Court reiterated that it would "not go further in its analysis to determine whether there is an implied license or if it was revocable, as these matters are appropriate for determination by a factfinder at trial" (ECF No. 134 at 7).

This procedural history brings us to the instant motion for summary judgment, in which Otter argues two things. First, Otter contends that "L'Heureux's sworn statements admitting to a minimum scope of permitted uses . . . do not implicate a question of L'Heureux's intent," because they establish that he granted Otter an implied license to use the Registered Images in at least *some* way, as reproduced below:

---

[3] Asked to determine the applicable standard for the revocability of implied licenses, the Court previously ruled that "copyright licenses are a type of contract and, therefore, governed by common law contracting principles," and that California state law controls the revocability analysis (ECF No. 134 at 5, 7 (citations omitted)). In light of this prior ruling, the parties now appear to disagree over whether the federal *Effects* test governs their dispute over the existence of an implied license. Capture Eleven argues that the *Effects* test is inapplicable because California state law applies, and under that law, "the party asserting the affirmative defense of an implied contract must prove 'the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter'" (ECF No. 197-1 at 13 (quoting *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050–51 (9th Cir. 2015)). Otter, however, points out the Ninth Circuit's apparent confirmation that the *Effects* test is "consistent with California law" on the issue of whether an implied license exists (ECF No. 201 at 5 (citing *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 n.10 (9th Cir. 2001)). Ultimately, the parties propose the same standard, just expressed differently—under both the federal *Effects* test and California common law contract principles, whether an implied license exists, at bottom, depends upon the licensor's objective intent as manifested by the parties' conduct. As such, the Court finds that the *Effects* test remains applicable in this context.

| Production | Uncontested Minimum Scope of Permitted Use |
|---|---|
| **Lake Powell** (*Wakeboarder*)[7] | No less than "summer collateral; namely, footage for the X-Games and lifestyle and product shots for FRE and NUUD cases, shot on iPhone 6 and iPhone 6+ devices." SOMF [#5]. |
| **Oceanside** (*Skaterboarder*) | No less than marketing LifeProof's iPhone 7 cases. SOMF [#6]. |
| **Riverside** (*Dirtbiker*) | No less than "a live event Periscope broadcast." SOMF [#7]. |
| **Mexico** | No less than marketing "Aquaphonics speakers." SOMF [#8]. |
| **San Diego** (*Longboarder & Wall-Jumpers*) | No less than marketing the "Galaxy S8 / FRE Power." SOMF [#9]. |
| **Whistler** | No less than marketing the "winter/holiday assets for Christmas launches that year." SOMF [#10]. |
| **Vancouver** (*Running Woman & Bike Rider*) | No less than marketing the "SLAM and NEXT cases for the iPhone 7." SOMF [#11]. |
| **Miami** | No less than marketing for "Spring/Summer 2018 cases and devices – NEXT / SLAM / FRE / GROMS and Galaxy S9 / S9+, iPhone X." SOMF [#12]. |

(ECF No. 159 at 11). Second, Otter contends that its present argument about the existence of an implied license is different than the arguments it previously asserted in connection with Capture Eleven's motion for summary judgment, because there, "Defendants were not charged with establishing the existence of an implied license," nor was this Court "directed to the concise evidence of specific admitted uses" (ECF No. 201 at 4–5).

As to this second contention, the Court discerns no meaningful difference between the implied license arguments and evidence set forth in Capture Eleven's prior motion and Otter's instant motion. Quite the contrary, in asserting the minimum "permitted uses" for each set of Registered Images in the chart above, Otter relies on nearly the exact same deposition testimony and affidavit declarations of L'Heureux that the Court previously considered in connection with

6

Capture Eleven's implied license assertions (*compare, e.g.*, ECF No. 159, ¶¶ 5–12, *with* ECF No. 89-7, ¶¶ 34, 36, 38, 40, 41, 48, 49, 57). Put simply, the Court has already considered these same arguments and evidence, and it has already ruled that the existence of an implied license is a fact issue for the jury.

Accordingly, as to Otter's first contention, the Court maintains, for the third time, that L'Heureux's intent with respect to the Registered Images presents a genuine factual dispute rendering summary judgment inappropriate. More specifically, pursuant to the third element of the *Effects* test, the jury must be permitted to decide whether there was a "meeting of the minds" between L'Heureux and Otter as to the Registered Images' use, and to evaluate L'Heureux's objective intent as manifested by the parties' conduct at the relevant time. *See Reinicke v. Creative Empire LLC*, 38 F.Supp.3d 1192, 1199 (S.D. Cal. 2014) (in determining a licensor's intent, the jury should look to, among other factors, "whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible").

For these reasons, the Court DENIES Otter's motion for summary judgment as to Capture Eleven's all-uses infringement claim.

**B. The undisputed facts show that Otter owns the Lake Powell Images and, as such, cannot have infringed on any copyrights held by Capture Eleven as to those images.**

Otter further moves for summary judgment on its counterclaims for declarations of non-infringement and ownership, asserting that Otter cannot have infringed, directly or indirectly, on any copyrights held by Capture Eleven related to photographs shot at Lake Powell (the Lake Powell Images) because, by the terms of the parties' Independent Contractor Agreement (ICA), Otter owns those images (ECF No. 159 at 12–16). In response, Capture Eleven argues that the ICA

7

had been retroactively terminated and was not in effect at the time L'Heureux worked on the Lake Powell photoshoot or, at a minimum, that whether the ICA was in effect at the relevant time presents a genuine factual dispute for the jury (ECF No. 197-1 at 17–18). Here, the Court agrees with Otter.

The undisputed facts establish that Otter and L'Heureux executed the ICA, effective January 1, 2015 (ECF No. 89-9 at 1, 6). Under the ICA, Otter agreed to engage L'Heureux to provide photographic and creative services for an initial one-year term, and thereafter for extended 30-day terms unless either party terminated via written notice provided to the other party at least five days prior to the conclusion of the 30-day term then in effect (*id.* at 2, ¶ 4). The ICA also provided that Otter would pay L'Heureux a monthly retainer of $15,000 for six days of photographic services per month (*id.* at 7). Furthermore, under the ICA, L'Heureux assigned "all right, title and interest" that he "may have or may hereafter have" in any copyrightable subject matter he produced during the time the ICA was in effect (*id.*, ¶ 11.1).

On May 10–11, 2016, L'Heureux shot the Lake Powell Images (ECF No. 159, ¶ 14; *see* ECF No. 159-17). On May 25, 2016, Otter emailed L'Heureux with a message: "This email is terminating your contract effective April 31st" (*sic*) (ECF No. 89-10). Following this email, however, L'Heureux issued invoices under the ICA through at least May 2016 (ECF No. 159-7 at 2; *see* ECF No. 159-4 at 138:16–142:3). L'Heureux also testified that the services he provided at the Lake Powell photo shoot were covered by his May 2016 ICA retainer fee, which Otter paid (ECF No. 159-4 at 142:4–143:10; *see id.* at 140:17–24).

Based on the foregoing, Otter clearly owns the Lake Powell Images, and thus cannot have infringed any of Capture Eleven's copyrights as to the same images. L'Heureux shot the Lake

Powell Images on May 11–12, 2016. Then, on May 25, 2016—two weeks after the photoshoot at Lake Powell was completed—Otter provided written notice of its intent to terminate the ICA. Because ICA ¶ 4 requires that termination notice be provided at least five days prior to the conclusion of the current 30-day term, the timing of Otter's written notice dictates that the ICA remained in effect until May 31, 2016, and that, pursuant to ICA ¶ 11.1, any works for hire produced prior to that date were owned by Otter. Otter's reading of the effect of ICA ¶ 4 is further bolstered by L'Heureux's admissions that he had invoiced Otter for his ICA retainer fee through at least May 2016, and that his retainer (which Otter paid) covered his services at the Lake Powell photo shoot.

Conversely, Capture Eleven's contention that "the ICA was not in effect and had been retroactively terminated before the dates of the Lake Powell shoot" (ECF No. 197-1 at 18) is manifestly incorrect. Even if Otter's written notice attempted to terminate the ICA "effective April 31st," this termination would be a nullity because of ICA ¶ 4's five-day advance notice requirement—that is, for the termination to have been "effective April 31st,"[4] Otter needed to have provided its written notice on or before April 25, 2016, not a full month later, on May 25, 2016. Put more simply, by the clear terms of the ICA, any "backdated" or "retroactive" termination was impossible. *See Ad Two, Inc. v. City & Cnty. Of Denver*, 9 P.3d 373, 376 (Colo. 2000) ("Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and *will be enforced according to their plain language.*") (emphasis added).

---

[4] A date that does not exist, given that April only has 30 calendar days. The Court finds that the only reasonable conclusion to be drawn from this language is that "April 31st" was a typographical error.

For these reasons, the Court GRANTS summary judgment in Otter's favor on its counterclaims for declarations of non-infringement and ownership as to the Lake Powell Images.

### C. The undisputed facts dictate that TreeFrog should be dismissed from this action.

Finally, Defendants move for summary judgment on all claims as to TreeFrog, arguing that "TreeFrog had no relevant role in any element of Plaintiff's claims" because it is not a direct or indirect infringer doing business as LifeProof—rather, TreeFrog merely licensed the LifeProof brand to Otter in 2014, years before any conduct giving rise to this action occurred (ECF No. 159 at 16–17). In other words, Defendants argue that Capture Eleven erroneously conflates the LifeProof brand (formerly under TreeFrog's control) with the TreeFrog entity (*see id.*). Capture Eleven counters that TreeFrog should remain in the action because it is, in fact, an infringer that sells LifeProof product and refers to itself as the entity LifeProof (ECF No. 197-1 at 18–20). The Court agrees with Defendants on this point.

Defendants set forth competent evidence establishing that beginning May 13, 2014, TreeFrog licensed "LifeProof" to Otter, thereby allowing Otter to use the "LifeProof" brand and trade name in commerce (*see* ECF No. 159-16; ECF No. 159-13 at 352:6–12, 352:20–25). L'Heureux negotiated the terms of his shooting engagements, including the terms of the ICA, with employees of Otter, not TreeFrog (ECF No. 89-9 at 6; *see* ECF Nos. 159-18, 159-19). L'Heureux also planned and executed productions with employees of Otter, not TreeFrog (*see* ECF No. 159-14, ¶¶ 3–5; ECF No. 159-12 at 28:10–24; ECF No. 159-10 at 14:21–15:3). Invoices for each of L'Heureux's photoshoots were issued to Otter (or to Otter's independently contracted production company, Verity Hoskins), not TreeFrog (*see* ECF Nos. 101-30, 101-31, 101-33, 101-34, 101-35, 101-36, 101-37, 101-38). TreeFrog was not a party to the ICA between L'Heureux and Otter (*see*

10

ECF No. 89-9). At all times relevant to this action, TreeFrog was not involved in managing, developing, or marketing the "LifeProof" brand, nor did it conduct business as "LifeProof" (*see* ECF No. 159-16; ECF No. 159-13 at 352:6–12, 352:20–25). Further, TreeFrog has neither sold nor profited from any of the allegedly infringing products in this action (ECF Nos. 201-11, 201-12).

Capture Eleven fails to raise a genuine dispute as to any of the facts set forth above. Citing to facts alleged in a complaint that TreeFrog filed in the Southern District of California, Capture Eleven asserts that TreeFrog has used another of its marks, "FRĒ," to sell products continuously from 2012 through at least February 2022, and observes that "Defendants in this case have been charged with infringement based on their sale of, *inter alia*, FRĒ phone cases" (ECF No. 197-1 at 19; ECF No. 193-5, ¶ 11). Similarly, citing to facts alleged in a complaint that TreeFrog filed in the Southern District of New York, Capture Eleven observes both that TreeFrog refers to itself as "LifeProof," and that TreeFrog stated that "Otter Products, LLC acquired LifeProof in 2013 and they have been doing business collectively ever since" (ECF No. 193-6, ¶ 12). Capture Eleven takes the various allegations in these foreign pleadings to mean that there are factual disputes over whether TreeFrog is involved in the sale of LifeProof products, and whether TreeFrog does business as LifeProof. In these same foreign pleadings, however, TreeFrog clarifies that it *owns* the "LifeProof" and "FRĒ" marks, but *licenses* them to Otter for all commercial purposes (ECF No. 193-5, ¶ 14; *see* ECF No. 193-6, ¶ 14; *see also* ECF Nos. 193-7, 193-8).

Put simply, to the extent that Capture Eleven ultimately proves at trial that its marks were infringed, the undisputed facts above suggest that any acts of infringement would have been committed by Otter (as the LifeProof brand licensee), not TreeFrog. As such, summary judgment

11

in TreeFrog's favor and its dismissal from the action is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

For these reasons, the Court GRANTS summary judgment in TreeFrog's favor on all claims asserted by Capture Eleven.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows as to Defendants' Motion for Summary Judgment (ECF No. 159):

1. The Court GRANTS summary judgment in Otter's favor and against Capture Eleven on Otter's counterclaims for Declaration of Non-Infringement (Count I) and Declaration of Ownership (Count II) as to the Lake Powell Images.

2. The Court GRANTS summary judgment in TreeFrog's favor and against Capture Eleven on all claims asserted by Capture Eleven. TreeFrog is, therefore, dismissed from this action.

3. The Court DENIES Defendants' motion for summary judgment in all other respects.

DATED this 5th day of June 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge