IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02551-CNS-KLM
*consolidated with 1:21-cv-00068-CNS-KLM*

THE CAPTURE ELEVEN GROUP, a California corporation,

     Plaintiff/Counter-Defendant,

v.

OTTER PRODUCTS, LLC, a Colorado limited liability company,

     Defendant/Counter-Plaintiff/Cross-Claimant,

v.

VERITY HOSKINS PRODUCTION, INC.,

     Third-Party Defendant.

---

## ORDER

---

     This matter comes before the Court on: (1) Plaintiff The Capture Eleven Group's Motion to Exclude Testimony of Gary Elsner (ECF No. 178); (2) Defendants' Motion to Strike David Drews' Improper Rebuttal on Causal Nexus (ECF No. 180); (3) Defendants' Motion to Exclude Certain Opinions of David Drews (ECF No. 182); and (4) Plaintiff The Capture Eleven Group's Motion to Exclude Testimony of Kevin M. Arst (ECF No. 186).

### I.  BACKGROUND

     This case arises out of a copyright dispute involving several sets of photographs taken by Justin L'Heureux at Otter's behest between 2016 and 2018, most of which were taken after the

parties' written contract was terminated. The instant motions were all filed on February 6, 2023, and are now fully briefed (ECF Nos. 178, 180, 182, 186). A jury trial is set to commence on March 4, 2024 (ECF No. 248).

## II. LEGAL STANDARDS

### A. Fed. R. Evid. 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). The party submitting the expert's testimony must show by a preponderance of the evidence that the testimony is admissible. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co*., No. 17-CV-01456-CMA-KLM, 2022 WL 1037572, at *2 (D. Colo. Apr. 1, 2022). To determine whether expert testimony is admissible, a court must determine whether: (1) the expert is qualified; (2) the expert's proffered opinion is reliable; (3) the expert's testimony is relevant; and (4) the proffered testimony will assist the trier of fact. *See id.* at *2; *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R. Evid. 702). An expert's testimony is reliable if the methodology employed by the expert is based on "sufficient data, sound methods, and the facts of the case." *Id.* (citation omitted). The expert's

testimony must be scientifically sound, but "absolute certainty" is not required. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quotation omitted). Testimony is relevant if it "logically advances a material aspect" of the case and has a "valid scientific connection" to the case's disputed facts. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citation omitted). The court looks to other non-exclusive factors to determine if the testimony will assist the jury: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *Rodriguez-Felix*, 450 F.3d at 1123 (citation omitted). Doubts about the testimony's usefulness should be resolved in favor of admissibility unless such factors (e.g., time or surprise) weigh in favor of exclusion. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

### B.  Fed. R. Civ. P. 26

Under Rule 26(a), a party is required to make expert disclosures "at the times and in the sequences the court orders." Fed. R. Civ. P. 26(a)(2)(D). These disclosures must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness," and "any exhibits that will be used to summarize or support them." *See* Fed. R. Civ. P. 26(a)(2)(B).

Under Rule 37(c), if a party fails to provide information per the requirements of either Rule 26(a) or 26(e), the party may not use that information to supply evidence at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in determining whether the Rule 26 violation was substantially justified or harmless, and the court need not make explicit findings on this issue. *Woodworker's Supply, Inc. v. Principal*

*Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citations omitted). When exercising its discretion, the Court looks to several factors: "(1) the prejudice and surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* "A trial court has considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *17 (D. Colo. Feb. 8, 2010) (citation omitted).

## III.  ANALYSIS

### A.  Defendants' Industry Expert Gary Elsner (ECF No. 178)

For several reasons, Plaintiff moves to exclude the opinions and testimony of Gary Elsner, Defendants' expert on industry standards and licensing practices in the field of commercial photography (*see* ECF No. 178). The Court finds none of these reasons compelling.

Plaintiff begins by arguing that Mr. Elsner lacks the requisite qualifications to opine on industry standards for licensing "assignment photography"—the type of photography at issue in this case—because the bulk of Mr. Elsner's career has instead centered around "stock photography" (*id.* at 3–7). Even assuming that the distinction between these two photography types makes a difference for *licensing* purposes, the Court remains unconvinced that this distinction warrants exclusion. This is so because an expert's specialization within his general field of expertise generally is not required—instead, courts will look to whether the proffered testimony is "within the reasonable confines" of the expert's subject area. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). "[A] lack of specialization does not affect the

admissibility of [the expert] opinion, but only its weight." *Id.* at 971 (citation omitted). "The trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Lovato v. Burlington N. & Santa Fe Ry. Co.*, No. CIV.A. 00-RB-2584CBS, 2002 WL 1424599, at *3 (D. Colo. June 24, 2002).

Here, the Court finds that Mr. Elsner's opinions on industry standards and licensing practices are within the reasonable confines of the subject area of his expertise, to wit, commercial photography. That Mr. Elsner may have limited professional experience in assignment photography would not prevent him from testifying about how photographs are licensed in this industry, particularly since the relevant standard is not whether an expert has identical experience to the underlying circumstances of the case, but whether his "technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). To the extent Plaintiff argue that Mr. Elsner's experience with stock photography is too attenuated from the assignment photography at issue in this case, that is a matter "opposing counsel can no doubt highlight on cross-examination, and which bears on the weight or credibility of [Mr. Elsner's] opinions, but not on their admissibility." *O'Sullivan v. Geico Cas. Co.*, 233 F.Supp.3d 917, 924 (D. Colo. 2017). The Court therefore denies Plaintiff's motion on this ground.

Plaintiff further argues that Mr. Elsner's opinions are neither supported by sufficient facts or data nor based on any reliable methodology, chiefly because Mr. Elsner bases his opinions on (i) industry standards, and (ii) his review of written invoices and licenses from the parties' prior dealings with other clients (*see* ECF No. 178 at 7–10). Closely related, Plaintiff goes on to argue that Mr. Elsner's opinions—in particular, that Defendants had an implied license to unlimited use

of Plaintiff's photographs—must be excluded as contrary to copyright law (*see id.* at 10–12). Again, the Court is unpersuaded. Pertinent here, the analysis of reliability and methodology is flexible and varies depending on the type of expert and the field in which they work. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). And of note, where a nonscientific expert's testimony is concerned, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150; *see also* Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.")

Here, the Court notes that Mr. Elsner purports to have expertise in commercial photography—a field he has worked in since 1963 (ECF No. 179-1, ¶ 4). In that time, Mr. Elsner gained professional experience consulting on industry practices, including negotiating image licenses, reviewing and approving photo agencies' licensing transactions, and providing trainings to others on licensing models and pricing (*see id.*, ¶¶ 3–12, 14–18). The Court finds it sufficiently clear from the overall content and organization of Mr. Elsner's report that his methodology amounts to applying his experience with the photography industry to conclude that Mr. L'Heureux had granted Defendants an implied license to the images at issue in this case. This method is, as a general matter, sufficiently reliable for Mr. Elsner to offer admissible testimony under Rule 702. To the extent that Plaintiff perceives any shortcomings in Mr. Elsner's assessment of the relevant industry standards or the documents he relied on in forming his opinions, these are matters for cross-examination, not bases for broad exclusion of Mr. Elsner's testimony. *See Daubert*, 509 U.S.

at 595 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Similarly, if, based on prevailing copyright law, Plaintiff disputes the correctness of Mr. Elsner's conclusions as to the existence of an implied license, such conclusions need not be "indisputably correct" in order to be admissible; instead, these are appropriate fodder for cross-examination. *See Miller v. Secura Ins. Co.*, No. 22-cv-00037-KLM, 2023 WL 4364157, at *8 (D. Colo. July 6, 2023) (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004)). The Court therefore denies Plaintiff's motion on this ground as well.

Finally, Plaintiff argues that Mr. Elsner should be prohibited from testifying regarding the parties' intent or meeting of the minds (*see* ECF No. 178 at 12–13). True enough, "Rule 702 does not allow an expert witness to speculate as to the intent or state of mind of the parties." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *8 (D. Colo. Mar. 25, 2020). But as Plaintiff *itself* points out, "Mr. Elsner admitted that he had no basis to speak regarding intent, that he could not do so, and represented that he would not be offering such opinions" (ECF No. 178 at 12). Although Mr. Elsner has yet to offer any opinions or testimony speculating on either party's knowledge, motivations, intent, state of mind, or purposes, and Mr. Elsner has repeatedly made assurances that he would not offer such testimony, Plaintiff nevertheless seeks a preemptive order excluding this testimony on the basis that "Mr. Elsner should be held to his word" (*id.* at 13). At this time, the Court declines Plaintiff's invitation to exclude hypothetical testimony. However, if at trial Mr. Elsner's (or indeed, any other expert's) testimony veers into improper opinions on a party's intent or state of mind, the Court will revisit its ruling at that time.

Based on the foregoing, the Court DENIES Plaintiff's motion as to Mr. Elsner in its entirety.

### B.  Timeliness of Expert David Drews' Rebuttal Opinions (ECF No. 180)

Defendants move to strike those portions of David Drews' rebuttal report that relate to causal nexus (*see* ECF No. 180). In particular, pursuant to their Joint Stipulation Proposing Revised Scheduling Order Deadlines, the parties agreed upon a "second rebuttal expert disclosure" deadline of January 6, 2023, limited to "solely addressing matters for which the party does not have the burden of proof" (ECF No. 136 at 2). Here, Defendants argue that Plaintiff violated the scheduling order by improperly introducing new opinions relating to causal nexus—an issue on which Plaintiff bears the burden of proof—in Mr. Drews' two "second rebuttal" reports of January 10, 2023, and January 20, 2023. Defendants further argue that the inclusion of these new causal nexus opinions renders Mr. Drews' rebuttal report "per se untimely" (*id.* at 3). The Court disagrees.

To be sure, Defendants correctly point out that "a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril" (ECF No. 226 at 9 (quoting *Anderson v. Seven Falls Co.*, No. 12-cv-01490-RM-CBS, 2013 WL 3771300, at *7 (D. Colo. July 18, 2013))). But for two reasons, the Court finds that striking Mr. Drews' rebuttal report for violating the parties' scheduling order is unwarranted. First, contrary to Defendants' insistence, Mr. Drews' rebuttal report is not "untimely." Although the parties originally stipulated to a second rebuttal expert disclosure deadline of January 6, 2023, the Court granted a two-week extension of this deadline to January 20, 2023, meaning that Mr. Drews' two reports served on January 10th and 20th were in fact timely (*see* ECF No. 246).

Second and more importantly, the Court agrees with Plaintiff that Mr. Drews' opinions relating to causal nexus in his rebuttal reports were supplements to his original opinion as contemplated (and, in fact, required) by Rule 26(e) (*see* ECF No. 204 at 2, 5–7). Of note, the Court had recent occasion to address a similar motion to strike Defendants' expert, Robert Zeithammer (*see* ECF No. 174). In that motion, Plaintiff argued that Dr. Zeithammer had withheld relevant survey data in violation of Rule 26(a)(2)(B), producing it in an "errata" notice only after Plaintiff's opposing expert had criticized his survey in her rebuttal report (*id.* at 2). Later during a hearing, the Court denied Plaintiff's motion, reasoning that Dr. Zeithammer had permissibly relied on Plaintiff's expert's rebuttal report to review his own report, noticed an error, and formed a supplemental opinion correcting that error (*see* ECF No. 246). That reasoning also applies here. Pursuant to Rule 26(e)(1)(A) and (2), an expert *must* supplement or correct his report if he "learns in some material respect the [report] is incomplete or incorrect." And here, following a rebuttal report issued by Defendants' opposing expert, Mr. Drews set forth a brief, two-page supplemental discussion of causal nexus in his reports of January 10th and 20th. The Court finds that this was a timely Rule 26(e) supplement to correct Mr. Drews' original causal nexus opinion in response to new information brought to light by Defendants' expert.

Accordingly, the Court DENIES Defendants' motion to strike Mr. Drews' opinions.

### C.  Plaintiff's Damages Expert David Drews (ECF No. 182)

Separately, Defendants move to exclude Mr. Drews' opinions relating to the calculation of actual damages and the existence of a causal nexus, arguing that Mr. Drews lacks the necessary qualifications to render such opinions, and that he failed to apply reliable methodologies to the facts of this case (*see* ECF No. 182). Once more, the Court is unpersuaded.

Defendants first take issue with the means with which Mr. Drews supports his calculation of actual damages for the use of Mr. L'Heureux's photographs on Otter's packaging. More specifically, Mr. Drews (i) relies on the "Plaintiff Comparables," a set of 25 invoices or contracts from the same approximate time period as the alleged infringement in this case that cover similar photography services and/or granting of usage rights; and (ii) excludes from the Plaintiff Comparables any prior invoices between the parties in this case (*see id.* at 6–12). According to Defendants, Mr. Drews neither elucidates nor applies any methodology to justify his reliance on the precise set of invoices and contracts that comprise the Plaintiff Comparables (*see id.*). But here, the Court agrees with Plaintiff that the methodology underlying Mr. Drews' reliance on the Plaintiff Comparables was sufficiently clear from his report. In particular, the report indicated that Mr. Drews calculated actual damages in this case "based on a real-world assessment of the fees that [Plaintiff] has negotiated for similar usage rights and/or customized photo shoots," looking specifically at:

- Comparable invoices/contracts generated where "a separate customized photo shoot was necessary for each new product that was to be featured," which Mr. Drews used to calculate damages for "the Infringed Works that were included on the packages of [Otter] products not included in the original intended use when the photo shoots took place"; and

- Comparable invoices/contracts negotiated for "additional usage for existing images, including use on websites," which Mr. Drews used to calculate damages for "the Infringed Works [whose] use was limited to digital use one, such as webpages or social media."

(*See* ECF No. 177-4 at 25, 27, 29–30). Given these explanations, Mr. Drews' reliance on the Plaintiff Comparables in his damages calculations (and his further categorization of the Plaintiff

Comparables based on photoshoot type or client size) is a proper subject for cross-examination, not a basis for wholesale exclusion. *See Daubert*, 509 U.S. at 595; *see also Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1085 (D. Colo. 2006) (as long as expert testimony satisfies the standard set forth in *Daubert*, "it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited").

Defendants further challenge Mr. Drews' opinion regarding the existence of a causal nexus in this case, arguing both that the opinion is conclusory and that he is unqualified to proffer such an opinion. The Court disagrees. Regarding the opinion itself, and as noted above, Mr. Drews' affirmative expert report contains a short discussion about causal nexus that Mr. Drews later supplemented in his rebuttal report (*see* ECF No. 177-4 at 22; ECF No. 177-5 at 22–24; ECF No. 177-6 at 22–24). And while he does so only briefly, Mr. Drews *does* conclude that a causal nexus exists, supported by reasons for his conclusion—namely, that (i) Mr. L'Heureux's photographs appear on the packaging of the Otter products "and thus are part of the items actually sold"; (ii) Defendants' own internal packaging/branding analysis showed that Mr. L'Heureux's photographs influenced consumer purchasing decisions; and (iii) Defendants' former creative director attributed Defendants' marketing success to Mr. L'Heureux's photographs (ECF No. 177-4 at 22). Although a close call, the Court finds that Mr. Drews' causal nexus opinion is sufficiently reliable in view of the facts he relies upon. *See Daubert*, 509 U.S. at 590 (testimony is reliable where it is "supported by appropriate validation—i.e., 'good grounds,' based on what is known); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (reliable testimony does not require

"absolute certainty," but demands only that the testimony "be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation").

Respecting Mr. Drews' expert qualifications, Defendants argue that while the causal nexus inquiry requires Plaintiff to show that the infringement influenced consumer purchasing decisions in a manner leading to increased profits for Defendants, Mr. Drews is "not an expert in marketing," nor is he an expert on "the impact of imagery on packaging, packaging design, or the role of packaging [in] selling products" (ECF No. 182 at 13–14). As Plaintiffs point out, however, Mr. Drews is "a licensing expert with expertise in valuation of intellectual property" (ECF No. 213 at 8). Mr. Drews' expert report details over 35 years of cumulative experience in IP valuation, including that he has published literature and taught courses on monetary remedies in IP cases, and that he has previously "testified on many occasions in litigation and arbitration involving damages calculations [in IP cases] . . . , and [has] been accepted by numerous courts as an expert witness in this regard" (ECF No. 177-4 at 5–6, 64–70). Based on the foregoing, the Court finds that Mr. Drews' professional experience qualifies him to opine on the existence of a causal nexus, at least to the extent that this predicate inquiry is part and parcel of the calculation of indirect profit damages (an area in which he is indisputably qualified to opine).

For these reasons, the Court DENIES the motion to exclude Mr. Drews' opinions.

### D.  Defendants' Damages Expert Kevin M. Arst (ECF No. 186)

Finally, Plaintiff moves to exclude the opinions and testimony of Defendants' damages expert, Kevin M. Arst, to the extent they relate to apportionment for profit disgorgement or to the existence of a causal nexus (*see* ECF No. 186). The Court rejects the motion in its entirety.

Plaintiff first argues that Mr. Arst's opinions regarding apportionment for profit disgorgement should be excluded because they are unsupported by sufficient facts, data, or methodology. More specifically, Plaintiff argues that Mr. Arst "provides no basis for his opinions except for his reliance on the opinions of Dr. Zeithammer," whose opinions were also "deficient in myriad ways" and were the subject of a separate, concurrently filed motion to exclude (*id.* at 2–3; *see also* ECF No. 184). In effect, to the extent that Dr. Zeithammer's opinions are excluded, Plaintiff requests that Mr. Arst's opinions also be excluded (ECF No. 186 at 3). The Court, however, has already denied Plaintiff's motion to exclude Dr. Zeithammer's testimony, finding his survey methodology to be sufficiently reliable under *Daubert* (*see* ECF No. 246). Here, even if Plaintiff finds fault with Dr. Zeithammer's surveys and any conclusions to be drawn therefrom, Mr. Arst's reliance on Dr. Zeithammer's opinions does not supply a basis to exclude Mr. Arst's opinions. Indeed, it is entirely appropriate for Mr. Arst to rely on a survey analysis conducted by another expert, when coming to his own independent conclusion in areas he is suitably qualified to opine, to wit, damages. *See Bullock v. Daimler Trucks N. Am.*, No. 08-cv-00491-PAB-MEH, 2010 WL 4135330, at *2 (D. Colo. Sept. 30, 2010); *Mitchell v. Rosenthal*, No. 1:20-cv-00778-RBJ, 2022 WL 16962263, at *5 (D. Colo. Oct. 11, 2022). The Court therefore denies Plaintiff's motion on this ground.

Separate but related, Plaintiff argues that Mr. Arst's opinions should be excluded because they are predicated on a misunderstanding of the law governing causal nexus. According to Plaintiff, while Mr. Arst's report expresses skepticism that the use of Mr. L'Heureux's photographs on Otter's packaging drove consumer sales, the law of causal nexus does not require a claimant to show what specific attributes of a product did or did not contribute to consumers'

purchasing decisions (*see* ECF No. 186 at 3–5 (citing *Wood v. Houghton Mifflin Harcourt Publi'g Co.*, 589 F.Supp.2d 1230, 1245 (D. Colo. 2008))). Having reviewed those portions of Mr. Arst's report referenced by Plaintiff, the Court finds his opinions to be consistent with the relevant law.

As here, a copyright claimant seeking to recover "indirect profits" damages—i.e., profits for sales of something other than a product that itself infringes—must demonstrate that "the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004); *see* 17 U.S.C. § 504(b). To be sure, as Defendants correctly observe, "establishing a causal nexus does not require the plaintiff to put a  . . . buyer on the stand to testify that she bought the product at issue specifically because of the infringement" (ECF No. 186 at 3 (quoting *Wood*, 589 F.Supp.2d at 1245)). Short of this, however, a claimant still must demonstrate that the infringing acts had *some* effect on defendant's revenue resulting from product sales. *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002); *accord Polar Bear Prods.*, 384 F.3d at 714–15 (requiring, to demonstrate a link between the infringement and sales revenue, some showing "that the infringement may have actually influenced the purchasing decisions of those that bought" the accused products). This is the precise inquiry to which Mr. Arst's report is directed—by analyzing consumer surveys, market share data, and similar research (*see* ECF 187-1 at 29–38), Mr. Arst both engages in the foundational causal nexus analysis required for Plaintiff's claim for indirect profits damages, and he directly rebuts and challenges Mr. Drews' conclusions on the same. This analysis is supported by the law governing causal nexus, and it is well within the ambit of permissible expert testimony. *See* Fed. R. Evid. 702(a) (expert testimony may be admitted where it "will help the trier of fact to

understand the evidence or to determine a fact in issue"). Accordingly, the Court denies Plaintiff's motion on this ground as well.

Based on the foregoing, the Court DENIES Plaintiff's motion as to Mr. Arst in its entirety.

## IV. CONCLUSION

In light of the above analysis, the Court ORDERS as follows:

1. Plaintiff The Capture Eleven Group's Motion to Exclude Testimony of Gary Elsner is DENIED (ECF No. 178);

2. Defendants' Motion to Strike David Drews' Improper Rebuttal on Causal Nexus is DENIED (ECF No. 180);

3. Defendants' Motion to Exclude Certain Opinions of David Drews is DENIED (ECF No. 182); and

4. Plaintiff The Capture Eleven Group's Motion to Exclude Testimony of Kevin M. Arst is DENIED (ECF No. 186).

DATED this 7th day of August 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge