IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02551-CNS-KAS
*consolidated with 1:21-cv-00068-CNS-KAS*

THE CAPTURE ELEVEN GROUP, a California corporation,

      Plaintiff/Counter-Defendant,

v.

OTTER PRODUCTS, LLC, a Colorado limited liability company,

      Defendant/Counter-Claimant/Third-Party Plaintiff,

v.

VERITY HOSKINS PRODUCTION, INC.,

      Third-Party Defendant.

---

## ORDER

---

Before the Court are Plaintiff's Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b); Plaintiff's Contingent Motion for a New Trial Under Federal Rule of Civil Procedure 59; Defendant Otter Products, LLC's Renewed Motions for Judgment as a Matter of Law Under Federal Rules of Civil Procedure 50(b) and 52(b); and Plaintiff's Motion for Prejudgment and Post-judgment Interest. *See* ECF Nos. 327, 331, 333, 335, and 338.

For the reasons set forth below, the Court DENIES Plaintiff's Rule 50(b) and Rule 59 Motions; DENIES Defendant's Rule 50(b) and Rule 52(b) Motions; and GRANTS Plaintiff's Motion for Prejudgment and Post-judgment Interest.

## I.    BACKGROUND

The Court presumes the parties' familiarity with this case's procedural and factual backgrounds. Following the parties' February 23, 2024, Trial Preparation Conference, this case proceeded to a seven-day trial on March 4, 2024. *See, e.g.,* ECF Nos. 282; 295–307. The jury awarded Plaintiff over $3,114,000 in total damages. *See* ECF No. 309; ECF No. 324. Judgment entered in Plaintiff's favor on November 5, 2024. ECF No. 324. Post-trial briefing, including the parties' instant, fully briefed motions, followed. ECF Nos. 327, 331, 333, 335, and 338.

## II.    ANALYSIS

### A.  Plaintiff's Rule 50(b) Motion

Plaintiff moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) because Defendant "failed to prove any apportionment" under 17 U.S.C. § 504(b), and therefore "a profit disgorgement award of $15.8 Million should be entered in this action." ECF No. 331 at 2; *see also id.* at 15 (seeking same relief "or in the alternative [that the Court] order a new trial solely on profit disgorgement" (capitalization omitted)). Defendant resists, arguing Rule 50(b) relief on this basis is improper. *See generally* ECF No. 343. The Court agrees with Defendant. In analyzing Plaintiff's motion, the Court cites the motion filed under restriction but does so without citation to any

restricted material. *Compare* ECF No. 331, *with* ECF No. 338 (public entry for restricted document entry 331).

### 1. Legal Standard

Judgment as a matter of law under Rule 50 is appropriate only where evidence "points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019); *see also Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) ("A party is entitled to [judgment as a matter of law] only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." (citations omitted)). In reviewing a Rule 50 motion, courts draw all reasonable inferences "in favor of the nonmoving party" and do not make "credibility determinations[,] weigh the evidence," or "challenge the factual conclusions of the jury." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019) (quotations omitted); *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002) (asking whether jury verdicts are "supported by substantial evidence" when record is viewed "most favorably to the prevailing party" (citation omitted)). Judgment as a matter of law under Rule 50 is "cautiously and sparingly granted," and granted only when courts are certain that the evidence "conclusively favors one party such that reasonable [people] could not arrive at a contrary verdict." *Mountain Dudes*, 946 F.3d at 1130 (citing *Bill Barrett*, 918 F.3d at 766).

### 2.  Analysis

The relief Plaintiff seeks appears consistent with Rule 50(b). *Compare* ECF No. 331 at 2, *with* Fed. R. Civ. P. 50(b). But the substance of Plaintiff's Rule 50(b) Motion belies this appearance.

As a preliminary matter, the Court must assure itself the subject of Plaintiff's post-verdict Rule 50(b) motion is the same as its pre-verdict Rule 50(a) motion. *See Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1266 (10th Cir. 2016) ("[A] party may only pursue a ground for relief in a postverdict Rule 50(b) motion if that same ground for relief was first asserted in a preverdict Rule 50(a) motion." (citation omitted)). The Court is not so quickly assured. Plaintiff contends it moved under Rule 50(a) "on apportionment." ECF No. 331 at 4. But in doing so during trial, Plaintiff made no mention of Dr. Zeithammer's testimony and its admissibility, as Plaintiff does now in its post-verdict Rule 50(b) motion. *Cf.* ECF No. 317 at 172–73. Despite its concern that there's too great a mismatch between the premises of Plaintiff's Rule 50(a) and Rule 50(b) motions, the Court assumes Plaintiff may properly pursue its Rule 50(b) ground for relief—judgment as a matter law in its favor on apportionment based on Dr. Zeithammer's "inadmissible" testimony, ECF No. 331 at 3—and proceeds in its merits analysis of Plaintiff's Rule 50(b) motion.

The gravamen of Plaintiff's Rule 50(b) Motion concerns the testimony of Defendant's expert, Dr. Zeithammer, who testified at trial—specifically, the admissibility of Dr. Zeithammer's testimony. *See, e.g.,* ECF No. 331 at 3; ECF No. 317 at 10. According to Plaintiff, "Dr. Zeithammer's testimony and associated survey were unreliable,

4

inadmissible evidence, admitted over [Plaintiff's] Fed. R. Evid. 702 objections," and
"*should not have been* admitted and [whose admission] was not harmless error." ECF No.
331 at 3 (emphasis added); *see also id.* at 7 ("The Zeithammer survey and testimony are
inadmissible evidence." (capitalization omitted)). Plaintiff recites a "host of reasons"
supporting exclusion in its Rule 50(b) Motion, including, *inter alia*, errors in Dr.
Zeithammer's survey sample selection, *id.* at 7, particularly as they relate to the "active
lifestyle" criteria; Dr. Zeithammer's use of an "improper universe" because he "screened
out and excluded" all survey respondents who indicated they did not own an iPhone, *id.*
at 12; a "complete mismatch" in the demographics of "actual LifeProof customers" and
Dr. Zeithammer's "sample demographics," *id.*; and Dr. Zeithammer's failure to
"adequately address implicit subconscious issues," *id.* at 14 (capitalization omitted).

As Defendant correctly observes, these are arguments attendant to the
*admissibility* of expert testimony—not whether, pursuant to Rule 50(b), a party is entitled
to judgment as a matter of law where "evidence in the record reveals no legally sufficient
evidentiary basis for a claim under the controlling law." *Bill Barrett*, 918 F.3d at 766
(citations omitted); *see also* ECF No. 343 at 8. Simply put, while styled as a Rule 50(b)
motion, Plaintiff actually seeks relief in the form of exclusion of Dr. Zeithammer's expert
testimony, as confirmed by arguments in Plaintiff's Reply: "[Plaintiff's Motion] is based on
a previously raised, rejected and preserved *Daubert* motion and objection under [Rule]
702"; "Dr. Zeithammer's survey and testimony *should have been excluded*."
(capitalization omitted) (emphasis added). ECF No. 347 at 7–8; *see also* ECF No. 331 at
3 (emphasis added); *id.* at 7. And because Plaintiff tries to push a square peg—essentially

post-trial exclusion of expert testimony, whose admissibility the Court already addressed at the May 9, 2023, Final Pretrial Conference—into a round hole—Rule 50(b)'s well-settled legal standard for granting judgment as a matter of law—Plaintiff has not shown any entitlement to Rule 50(b) relief for the reasons set forth in its Motion. *See, e.g., Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013); *KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 877 (E.D. Tex. 2020).

Seeking support, Plaintiff turns to *Weisgram v. Marley Company*, 528 U.S. 440 (2000). *See* ECF No. 331 at 6. *Weisgram*, as Defendant observes, provides limited support for Plaintiff's position, and stands for the non-controversial proposition that "entry of judgment as a matter of law extends to cases in which, on excision of testimony erroneously admitted, there remains insufficient evidence to support the jury's verdict." *Id.* at 457; *see also Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002) ("Key to surviving a Rule 50 motion is a legally sufficient evidentiary basis for the verdict."). But presuming, as Plaintiff urges, *Weisgram* encourages the Court to essentially review its evidentiary ruling regarding Dr. Zeithammer's expert testimony under the guise of Rule 50, the Court's review does not yield Plaintiff's sought-after Rule 50(b) relief.

*First*, the Court previously concluded, as noted above, during the parties' May 9, 2023, Final Pretrial Conference that Dr. Zeithammer's testimony was admissible at trial. *See* ECF No. 283 at 5–7; *see also* ECF No. 252 at 9. At the Final Pretrial Conference, the Court found, *inter alia*, Dr. Zeithammer's methodology was not "suspect," Plaintiff's sampling challenges were "unavailing," and "to the extent [Dr. Zeithammer is] focusing on

6

the active lifestyle, that seems to be what this case has been about from the beginning in terms of what the marketing strategy that was employed here." ECF No. 283 at 6–7. *See also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (noting "the judge [must] assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts" (citation omitted)).

The Court reiterated its conclusion regarding Dr. Zeithammer in a subsequent evidentiary order: "The Court, however, has already denied Plaintiff's motion to exclude Dr. Zeithammer's testimony, finding his survey methodology to be sufficiently reliable under *Daubert*." ECF No. 252 at 13. Therefore, the Court has already performed its evidentiary "gatekeeping" function—pretrial—with respect to Dr. Zeithammer's testimony, and his testimony is therefore "admissible evidence [in] the trial record" the Court may properly examine in determining whether Rule 50(b) relief is warranted. *Goodman*, 293 F.3d at 665; *Dodge*, 328 F.3d at 1221. Simply put, *Weisgram*'s insight that courts assess Rule 50(b) motions and evidentiary sufficiency following "excision of testimony erroneously admitted" lacks force where Dr. Zeithammer's testimony was, following the Court's *Daubert* analysis, properly admitted. 528 U.S. at 447.

*Second*, the "host of reasons" Plaintiff marshals, cited above, does not disturb the Court's prior admissibility determinations regarding the reliability and relevance of Dr. Zeithammer's methods and testimony as applied to the facts of this case. *See, e.g.,* ECF No. 283 at 7; ECF No. 252 at 13; *Dodge*, 328 F.3d at 1221. As noted at the Final Pretrial Conference, Plaintiff's exclusion arguments—just like the "host" it advances again in its

Rule 50(b) motion—were well-suited for cross-examination, when Plaintiff had the opportunity to expose any weaknesses in Dr. Zeithammer's methods and analysis. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking ... admissible evidence."). And Plaintiff's Rule 50(b) arguments falter where, by now, the Court has already discharged its *Daubert* duty regarding Dr. Zeithammer's testimony; determined Dr. Zeithammer's testimony was admissible; presided over a seven-day jury trial; and a jury heard testimony from numerous experts and witnesses, including Dr. Zeithammer; the jury then weighed those witnesses' testimony and credibility; and the jury returned its verdict. *Cf. In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1132 (2d Cir. 1995) ("Admissibility entails a *threshold* inquiry over whether a certain piece of evidence ought to be admitted at trial . . . . A sufficiency inquiry . . . lies further down the litigational road.") (original emphasis); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) ("[A] district court must admit expert testimony as long as it is based on a reliable methodology. It is then *for the jury* to evaluate the reliability of the underlying data, assumptions, and conclusions." (citation omitted)).

*Third*, Dr. Zeithammer testified at trial. *See, e.g.,* ECF No. 317 at 10. Indicated above, Plaintiff cross-examined Dr. Zeithammer. *See generally id.* at 42–76. The jury heard direct, cross-examination, and re-direct examination testimony from Dr. Zeithammer. But as Defendant observes—and contrary to Plaintiff's suggestion—this is not the "only" evidence of apportionment presented to the jury and contained in the trial

record. *Compare* ECF No. 331 at 3, 5; *and* ECF No. 347 at 5, *with* ECF No. 343 at 5. For instance, Ms. Vats testified there was "no indication" that there were "more sales or a less steep dropoff in sales as a result of the lifestyle packaging." ECF No. 315 at 158–59; *see also id.* at 132. Mr. Kirby testified the "lifestyle images . . . led to frustration for consumers because they couldn't really read what we were trying to tell them because it's all image." ECF No. 314 at 191; *see also id.* at 192. Mr. Vater attributed the success of the LifeProof case to public relations efforts for the LifeProof brand. *See* ECF No. 316 at 63. And Mr. Arst—as the above examples indicate, and contrary to Plaintiff's suggestion—was not the only witness beyond Dr. Ziethammer to opine on or testify regarding apportionment, and testified that in his opinion there was no causal nexus between the "accused images" and "Otter's sales." ECF No. 317 at 105. Taken together, this evidence provides a sufficient basis for the jury's factual apportionment conclusions—especially viewing it in Defendant's favor, as the Court is required to do. *See Yield Dynamics, Inc. v. TEA Sys. Corp.*, No. C 06-0331 VRW, 2007 WL 9812915, at *4 (N.D. Cal. Aug. 15, 2007) (denying motion for judgment as a matter of law after reciting "partial list of the evidence upon which the jury may have reasonably reached an apportionment"); *Mountain Dudes*, 946 F.3d at 1130.

After considering this testimony and the trial record in its totality—which, as discussed above, includes Dr. Zeithammer's admissible testimony—the Court is unpersuaded that the evidence "points but *one way*" regarding apportionment and "is susceptible to *no reasonable inferences* which may support" Defendant's position in resisting Plaintiff's Rule 50(b) motion. *Mountain Dudes*, 946 F.3d at 1129 (emphases

added). And for the same reason that ample testimony in the trial record counsels against Rule 50(b) relief, so too does it show that Plaintiff errs in arguing "[a]bsent the Zeithammer evidence, there is *no evidence* supporting *any* apportionment in this case." ECF No. 331 at 15 (emphases added). Accordingly, the Court rejects Plaintiff's harmless error argument. *Id.*

Plaintiff may take issue with Dr. Ziethammer's testimony. *See generally* ECF No. 331. But, confronted with the jury's verdict—the product of its deliberative process, following a seven-day trial, and its members' consideration and weighing of experts' and witnesses' credibility as well as trial exhibits—the Court declines Plaintiffs' invitation to disturb the verdict and enter judgment as a matter of law in its favor regarding apportionment, based on what are, at the end of the day, Plaintiff's admissibility qualms. *Compare* ECF No. 343 at 8, *with* ECF No. 347 at 9. *See also In re Urethane Antitrust Litig.*, 768 F.3d at 1263; *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289 (10th Cir. 2000) (noting where "award was within the range of evidence, [entering] judgment as a matter of law . . . would be to impermissibly speculate as to the manner by which jurors arrived at the verdict" (citation omitted)); *Liberty Mutual*, 913 F.3d at 983.

\* \* \*

At this stage, "[t]his case is about sufficiency, not admissibility." *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d at 1132. For that reason, Plaintiff's Rule 50(b) Motion stumbles out of the gate. But even considering its evidentiary challenges under Rule 50(b)'s sufficiency framework, Plaintiff has not shown it is entitled to "judgment as a matter of law in its favor on apportionment and entry of an award of un-apportioned profits," or,

in the alternative, "a new trial limited solely to profit disgorgement." ECF No. 331 at 15. *Cf. Mountain Dudes*, 946 F.3d at 1129. Because the Court rejects Plaintiff's Rule 50(b) arguments, it need not reach Defendant's arguments based on entertaining Plaintiff's "demand," *e.g.,* that doing so "violates the Seventh Amendment" or "encroaches on the jury's verdict." ECF No. 343 at 2.

Plaintiff's Motion for Judgment as a Matter of Law Under Rule 50(b) is DENIED.

### B. Plaintiff's Rule 59 Motion

Plaintiff "contingently moves, in the alternative, for a new trial" under Federal Rule of Civil Procedure 59 "limited solely to profit disgorgement because Dr. Zeithammer's testimony and report should have been excluded." ECF No. 333 at 2; *see also Dupree v. Younger*, 598 U.S. 729, 732 (2023). Plaintiff's Rule 59 Motion proceeds from the same premises as its Rule 50(b) motion, and "incorporat[es] fully by reference" the same arguments. ECF No. 333 at 2. As these arguments failed to persuade relief under Rule 50(b) was proper, so too do they fail to persuade relief under Rule 59 is proper. *See also Nosewicz v. Janosko*, 857 F. App'x 465, 468 (10th Cir. 2021) (explaining bases for Rule 59 relief); *Questar*, 201 F.3d at 1289.

Plaintiff's Contingent Motion for a New Trial Under Rule 59 is DENIED.

### C. Defendant's Rule 50(b) and Rule 52(b) Motions

Defendant moves under Rules 50(b) and 52(b) for renewed judgments as a matter of law: "(1) barring disgorgement of Defendant's profits; (2) holding Plaintiff's registrations for the 2016 photographs invalid; and (3) amending the Court's order regarding revocation." ECF No. 335 at 2. Plaintiff sees no merit in Defendant's requests for Rule

50(b) and Rule 52(b) relief. ECF No. 345 at 2. The Court agrees with Plaintiff, addressing Defendant's arguments in turn. Before proceeding, the Court notes Defendant's request for oral argument, *see* ECF No. 335 at 2, but, after examining the parties' post-trial briefing and trial record, has determined that oral argument would not materially assist in the resolution of Defendant's motions.

### 1. Disgorgement

Defendant argues "there is no sufficient evidentiary basis" for Plaintiff's disgorgement claim. ECF No. 335 at 3. Plaintiff counters substantial evidence supports the jury's disgorgement award, precluding Rule 50(b) relief. *See* ECF No. 345 at 2. The Court agrees with Plaintiff.

As a preliminary matter, the parties dispute what "legal standard" governs the Court's analysis of the jury's disgorgement award. *Compare* ECF No. 335 at 4, *with* ECF No. 345 at 2. Central to this dispute is *I Dig Texas, LLC v. Creager*, 98 F.4th 998 (10th Cir. 2024), and whether it demands Plaintiff "prove" Defendant sold "more products because of the advertisements with the copyrighted photographs." *See* ECF No. 335 at 4 (emphasis omitted); *but see* ECF No. 345 at 3 (contending *I Dig Texas* "did not . . . set forth a new standard requiring proof [that] defendant sold more products" (emphasis omitted)). Defendant reads *I Dig Texas* broadly, and as essentially dispositive, *see* ECF No. 335 at 4, while Plaintiff, in disagreement, urges a narrowed reading, *see* ECF No. 345 at 3.

The Court need not broadly opine on what "legal standard" *I Dig Texas* establishes to resolve Defendant's motions. To be sure, *I Dig Texas* bears relevance, asking whether

its "claimant could make [a] showing" of "indirect profits" under the Copyright Act "without tying the copyrighted images to any of the infringer's profits." 98 F.4th at 1004. And *I Dig Texas* "answer[ed] *no* because the absence of a proven nexus would require us to speculate about the possibility of any profits from the use of the copyrighted images." *Id.* But—as Plaintiff observes—*I Dig Texas* arose from "the district court grant[ing] summary judgment . . . ." *Id.* at 1006. And the party claiming infringement "failed to present evidence of any profit from the use of its photographs." *Id.* Against these factual and procedural backgrounds, the Tenth Circuit considered the infringed party's indirect-profits damages theory, affirming because, *inter alia*, "there [was] *no evidence* that [the infringer] sold *any more* products because the advertisements had included [the] photographs." *Id.* at 1008 (emphases added); *see also id.* ("[The infringed] presented *no* evidence that [the infringer] had made *any* money from the advertisements bearing the copyrighted images; [the infringed] showed *only* that [the infringer] had included copyrighted images in its advertising.") (emphases added). It is these distinguishable factual and procedural backgrounds that, in this case, limit *I Dig Texas*'s reach. E.g., *I Dig Texas* was decided following summary judgment; Defendant's post-verdict motions arise following a seven-day jury trial. *Compare* 98 F.4th at 1006; *id.* at 1007 ("Because this issue arises on summary judgment, the court's inquiry involves a question of law on the existence of a genuine dispute of material fact." (citation omitted)), *with* ECF No. 335, *and Dupree*, 598 U.S. at 732; *Mountain Dudes*, 946 F.3d at 1129.

Accordingly, the Court declines to read, or apply, *I Dig Texas* as broadly as Defendant, and proceeds in its analysis of Defendant's evidentiary arguments with *I Dig Texas*'s distinguishing features in mind.

Fundamentally, Defendant argues, with select citations to the trial record, that Plaintiff only advanced "generalized evidence" of increased sales from the asserted images, and thus "there is no legally sufficient evidentiary basis for a finding or award of $3 million in disgorgement" damages. ECF No. 335 at 8. Plaintiff, offering competing evidentiary citations, contends there was sufficient trial evidence for a jury to "reasonably find [a] causal nexus" between the "infringing images and Defendant's profits." ECF No. 345 at 6 (capitalization omitted).

Proceeding, as the Court must, under Rule 50(b)'s well-settled legal framework, there is sufficient and substantial evidence to sustain the jury's findings regarding and award of disgorgement damages. *See Webco*, 278 F.3d at 1128. For example, in his testimony Mr. Kirby agreed that "packaging is often considered the face of the brand." ECF No. 314 at 41. He also testified "interesting imagery" helps a product "pop out" so that a customer actually "goes and looks at it," an aspect of a "call to action," defined as a part of an advertisement where "there's a button to push buy now, that would be a call to action, or shop now or learn more. And a package would be that call to action on the shelf." ECF No. 314 at 40. Mr. Kirby further testified that Defendant's own internal documents and survey analyzed infringing packages and determined they impacted customers positively, and that Mr. L'Heureux's images "worked." ECF No. 314 at 47.

Ms. Vats agreed in her testimony that the way to get customers' "eyeballs on your product is with imagery." ECF No. 315 at 142. Ms. Vats also testified in agreement that the length of time—2.6 seconds—the asserted runner image held over respondents' attention was a "really long time." ECF No. 315 at 315. And, consistent with Mr. Kirby's call to action testimony, and drawing all inferences in favor of Plaintiff, *see Liberty Mutual*, 913 F.3d at 983, Ms. Vats testified there was a relationship between products' call to action and the imagery. ECF No. 315 at 153.

Testimony of Plaintiff's expert, Mr. Drews, is likewise consistent. Mr. Drews testified he investigated whether Defendant's profits were related to Defendant's infringement. *See* ECF No. 315 at 28. Mr. Drews testified there was "information indicating that there was a causal relationship between the use of the images and the generation of the profits," and later it was his interpretation "that there was some way, shape, or form that the images did contribute to the generation of the profits." ECF No. 315 at 29, 61. Mr. Drews's testimony in support of this point was thorough, but he testified at one point that "there's the simple fact that the images were used on the packaging itself," and that "when people buy that particular product, there's the image right there . . . when you actually receive the product, even from an online purchase, you still have the imagery associated with that particular thing, the reinforcement of that active lifestyle brand message." ECF No. 315 at 30; *see also id.* at 29 (testifying "Mr. L'Heureux's imagery was a critical component of the success of the LifeProof brand").

Against the weight of this evidence and remaining evidence in the trial record, Defendant's argument Plaintiff only presented "*generalized* evidence" regarding

15

disgorgement deflates. ECF No. 335 at 5 (emphasis added). As indicated above in the Court's discussion of *I Dig Texas*, as a doctrinal matter Defendant fails to persuade that Plaintiff was required to prove Defendant sold "any more products" because of the packaging. ECF No. 335 at 8. Simply put, this is not a case where Plaintiff put forth "*no* evidence that [Defendant] had made *any* money" based on its conduct, or where Plaintiff merely put forth evidence showing Defendant put "copyrighted images in its advertising" without any economic consequence or effect. *I Dig Texas*, 98 F.4th at 1008 (emphases added). *Cf., e.g., Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1245 (D. Colo. 2008) ("[E]stablishing a causal nexus does *not* require the plaintiff 'to put a . . . buyer on the stand to testify that she bought' the product at issue specifically because of the infringement.") (quoting *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003); *Garcia v. Coleman*, No. C-07-2279 EMC, 2009 WL 799393, at *4 (N.D. Cal. Mar. 24, 2009) ("[The plaintiff] need only have offered evidence that the photograph, featured prominently on the Sonoma Ridge wine label, 'may have actually influenced the purchasing decisions' of consumers that bought the wine." (citation omitted)). At a bare minimum, the testimony discussed above undercuts *I Dig Texas*'s application in a way that results in judgment as a matter of law in Defendant's favor. This is especially true where the Court is required, in ruling on Defendant's motion, to draw all inferences in Plaintiff's favor. *See, e.g., Liberty Mutual*, 913 F.3d at 983.

The Court makes one final note. Arguably, there is a tension between evidence supporting the jury's apportionment and disgorgement findings. It is not the Court's job to resolve it by second-guessing the jury. The jury's award was within the range of evidence.

*See Questar*, 201 F.3d at 1289. That contradictory evidence exists in the record is no reason to set its award aside. *See Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1018 (10th Cir. 2008) ("In setting damages, the jury's function is to weigh contradictory evidence, to judge the credibility of the witnesses, and to resolve factual disputes." (quotation omitted)). And, regarding disgorgement specifically, the Court cannot conclude, considering the totality of trial evidence and testimony, that "*all* of the evidence in the record reveals *no* legally sufficient evidentiary basis" to sustain the jury's disgorgement findings and conclusions. *Bill Barrett*, 918 F.3d at 766 (citations omitted) (emphases added).

Accordingly, judgment as a matter of law regarding the jury's finding regarding and award of disgorgement damages is improper.

### 2.  The 2016 Registrations

Defendant renews its Rule 50(a) motion "for a holding that . . . the 2016 Registrations" are invalid under 17 U.S.C. § 411(b). ECF No. 335 at 8. Essentially, Defendant "asks the Court to declare the '648 and '728 Registrations invalid or, in the alternative, to request direction from the Registrar of the Copyright Office and enter judgment accordingly." ECF No. 335 at 9. Plaintiff argues Defendant's challenge is "without merit and outside the realm of *Unicolors*." ECF No. 345 at 12. The Court agrees with Plaintiff.

Section 411(b)(1) of the Copyright Act provides a "safe harbor" for those who "inadvertently include inaccurate information on a registration application." *Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2022 WL 3682936, at *3 (D.N.M. Aug. 25, 2022)

(citing *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022)). Under this safe harbor provision, a registration certificate is valid "regardless of whether the certificate contains any inaccurate information, unless . . . the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). "Knowledge," under § 411(b), is defined as "the fact or condition of being aware of something." *Unicolors*, 595 U.S. at 184 (quotations omitted); *see also id.* at 185 ("Registration applications call for information that requires both legal and factual knowledge." (citation omitted)).

Assuming Mr. L'Heureux provided inaccurate information in the 2016 Registrations, trial testimony reveals—or, at a minimum, provides sufficient evidence, particularly when drawing inferences in Plaintiff's favor—he did not include such information with "knowledge that it was inaccurate." § 411(b)(1)(A). Mr. L'Heureux testified that at the time he submitted the copyright application, he believed he owned the Lake Powell images; at the time he submitted the corrective supplemental copyright applications, that he believed he owned the copyright images; and that no one at that time told him that he did not own them. ECF No. 313 at 247. This is sufficient evidence to survive Defendant's Rule 50(b) motion regarding the 2016 Registrations. *See Webco*, 278 F.3d at 1128. And given the nature of this testimony, the Court is unpersuaded by Defendant's argument Mr. L'Heureux was "willfully blind" to the factual inaccuracy of his submissions or their legal requirements, or that the Copyright Office would have rejected the application but for Plaintiff's inaccurate submission. ECF No. 335 at 9. *Cf. Meow Wolf*, 2022 WL 3682936, at *8 (concluding plaintiff was "at best willfully blind" where copyright

office examiner explicitly told plaintiff of material source requirement on May 13, 2019, and plaintiff applied for registration on September 19, 2019).

Defendant points to the Court's summary judgment order regarding its ownership of the Lake Powel images as practically dispositive. *See, e.g.,* ECF No. 335 at 10. Certainly, the Court ruled in its summary judgment order that Defendant owned the Lake Powell images. *See* ECF No. 251 at 7. But in its Reply, Defendant contends the "summary judgment order simply established the *legal predicates* for Otter's position, with the *factual predicates* established in parallel *by the trial record.*" ECF No. 348 at 6 (emphases added); *see also id.* ("*Based on the trial record*, Mr. L'Heureux knew, or was willfully blind to, [Defendant's] ownership . . . ." (emphasis added)). Defendant cannot argue, on one hand, that the Court's summary judgment motion resolves the matter—or should have, from a procedural perspective, long ago resulted in a resolution regarding the 2016 Registrations' validity—while, on the other, relying in equal part on the trial record for its Rule 50(b) motion's invalidity argument. *See id.* This also disarms Defendant's argument the Court's prior appealability determinations "vitiate" § 411. ECF No. 348 at 7. Moreover, the Court's conclusions on Defendant's 2016 Registration arguments are bolstered by the simple fact that, at trial, Plaintiff did not seek relief based on the Lake Powell images. *See, e.g.,* ECF No. 313 at 247; ECF No. 323 at 2.

Accordingly, Rule 50(b) relief based on the 2016 Registration grounds asserted in Defendant's motion, *see* ECF No. 335 at 11–12, is unwarranted.

### 3. Revocation

Defendant moves under Rule 52(b) for an order "amending the Court's prior order on revocation," essentially arguing amendment is required to "avoid creating an inconsistent verdict." ECF No. 335 at 12. Plaintiff discerns no merit in Defendant's "rehashed revocation arguments," contending its Rule 52(b) motion is a veiled effort to improperly "disturb the jury's verdict." ECF No. 345 at 15. The Court agrees with Plaintiff.

Federal Rule of Civil Procedure 52(b) permits courts to "amend its findings . . . and may amend the judgment accordingly." "The purpose of such a motion is to correct manifest errors of law or fact, or, in some limited situations, to present newly discovered evidence." *Jacobson v. XY, Inc.*, Civil Action No. 07–cv–02670–WYD–BNB, 2010 WL 2692170, at *6 (D. Colo. July 6, 2010) (citation omitted). "Manifest error is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Hardie-Tynes Co. v. SKF USA, Inc.*, No. 2:16-CV-1417-LCB, 2022 WL 1082395, at *1 (N.D. Ala. Feb. 1, 2022) (quotation omitted).

As with this case's broader factual and procedural backgrounds, the Court presumes the parties' familiarity with the jury's verdict, the parties' post-verdict revocation briefing, and the Court's revocation order. *See, e.g.,* ECF No. 309; ECF Nos. 320–323. Proceeding from that presumption, nothing in Defendant's motion upsets the analysis and conclusions in the Court's prior revocation order, especially when considered under Rule 52(b)'s narrow standard for granting relief. *See generally* ECF No. 323; *Hardie-Tynes*, 2022 WL 1082395, at *1 (noting Rule 52(b) motions are "disfavored in federal court and are granted only in narrowly circumscribed circumstances" (quotations omitted)).

Defendant has adduced no new evidence, *see, e.g., Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 998 (9th Cir. 2001), showing the Court's prior revocation order should be amended pursuant to Rule 52(b). And the trial evidence Defendant marshals in support of its Rule 52(b) motion, *see* ECF No. 335 at 14, does not show the Court "completely disregard[ed] . . . credible evidence in the record" in its revocation order, *Hardie-Tynes*, 2022 WL 1082395, at *1 (quotation omitted).

As explained in the Court's revocation order, there are multiple possible bases for the jury's determinations, and moreover "whether the implied license was revoked is irrelevant because use outside the scope of an implied license is by definition unlicensed and not permitted use and, thus, there is nothing to revoke." ECF No. 323 at 3. Then, as now, Defendant has failed to meet its burden of showing post-trial relief—now under Rule 52(b)—is proper, especially considering the evidence the Court recited in its revocation order, and that Defendant's Rule 52(b) arguments are substantially similar to those advanced and rejected in its prior revocation briefing. *See also PNC Equip. Fin., LLC v. Carr*, No. 19-mc-80013-BLF, 2022 WL 899849, at *1 (N.D. Cal. Mar. 28, 2022) ("Importantly, neither Rule [52(b) or 59(e)] may be used as a vehicle for reconsideration of issues already raised or a rehearing on the underlying motion." (citation omitted)); *Bell v. VF Jeanswear LP*, No. CV-14-01916-PHX-JJT, 2019 WL 337012, at *1 (D. Ariz. Jan. 28, 2019) ("In its present [Rule 52(b)] Motion, Plaintiff has presented nothing new, and it should thus come as no surprise to Plaintiff that the Court's findings remain the same now.").

To the extent that Defendant premises its motion on the jury's award of damages based on the "lesser included period" of June 2018 through trial, the Court previously rejected this argument and does so again. *Compare* ECF No. 335 at 12, *with* ECF No. 323 at 3. In its prior revocation order, as now, the Court observed "Defendant's argument centers around the damage time frames that it suggested. Though tempting, the Court remains convinced that the jury understood and followed the Court's instructions. In that vein, Defendant fails to demonstrate that the jury's verdict was not supported by substantial evidence. Absent such a finding, the Court cannot set aside the jury's findings." ECF No. 323 at 3. This is particularly true where, as Defendant's briefing reveals, its Rule 52(b) arguments depend in part on upsetting the jury's factual determinations, which the Court in its discretion declines to do. *See, e.g.,* ECF No. 335 at 12 ("Following trial, *the jury* found *no actual or disgorgement damages* were attributable to any uses from August 24, 2017 through trial.") (first emphasis added); ECF No. 348 at 10 ("[T]he only consistent interpretation remains that *the jury found* an outside-of-scope use . . . .") (emphasis added).

At bottom, "[Defendant] has not identified a manifest error of law or fact in the Court's [revocation] order. Nor has it presented newly discovered evidence." *Shenzen Synergy Digital Co. v. Mingtel, Inc.*, No. 4:19-cv-00216, 2022 WL 2252585, at *3 (E.D. Tex. June 22, 2022); *Hyatt v. May*, No. 1:19-cv-00250-MR-WCM, 2023 WL 2742227, at *13 (W.D.N.C. Mar. 29, 2023) (denying Rule 52(b) motion where defendant raised "all of [his] arguments in his initial round of post-trial briefing . . . and the [c]ourt addressed each

of these arguments"). Defendant is not entitled to Rule 52(b)'s "extraordinary relief." *Shenzen Synergy*, 2022 WL 2252585, at *3.

* * *

Defendant's Renewed Motions for Judgment as a Matter of Law are DENIED.

### D.  Plaintiff's Prejudgment and Post-judgment Interest Motion

Plaintiff seeks an award of prejudgment and post-judgment interest based on Colorado's statutory interest rate. *See generally* ECF No. 327. Defendant does not challenge Plaintiff's entitlement to an award of post-judgment interest, or an award of pre-judgment interest on the jury's award of "actual damages." ECF No. 339 at 2 n.1. Instead, the parties' core disputes concern (1) whether Plaintiff is entitled to prejudgment interest on its $3,000,000 disgorgement award, and (2) the applicable interest rate to that award. *Compare* ECF No. 339 at 2–3, *with* ECF No. 342 at 2.

For the following reasons, the Court agrees with Plaintiff that it is entitled to prejudgment interest on its actual damages and profit disgorgement awards. The Court concludes the applicable prejudgment interest rate is the prime rate.

#### 1.  Prejudgment Interest's Availability

Indicated above, the parties fundamentally dispute whether the Court should award prejudgment interest on disgorged profits from Defendant's infringement. *Compare* ECF NO. 339 at 5–9, *with* ECF No. 342 at 2–9. The Court agrees with Plaintiff that an award of prejudgment interest on its $3,000,000 profit disgorgement award is proper.

Central to the parties' dispute is *Kleier Advert., Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036 (10th Cir. 1990), and whether, to summarize Defendant's argument, portions

of *Kleier* "purport[ing] to address prejudgment interest based on [disgorgement] are mere dicta," ECF No. 339 at 8, and conflict with other cases that would preclude prejudgment interest on the disgorgement award, *id.* at 6. *Contra* ECF No. 342 at 5 ("[M]ultiple Courts in this Circuit and elsewhere have followed . . . *Kleier* in awarding prejudgment interest on profits disgorgement awards." (citations omitted)).

*Kleier* is clear: "[P]rejudgment interest is available to plaintiffs under the Copyright Act." 921 F.2d at 1041; *see also id.* ("This pronouncement comports with our earlier decision that under federal law prejudgment interest is ordinarily awarded, absent some justification for withholding it." (quotations omitted)). The Tenth Circuit went so far as to conclude the "trial court *abused its discretion* by denying Kleier prejudgment interest on its copyright claims." *Id.* at 1041 (emphasis added).

Defendant contends that prejudgment interest is unavailable because it "aims to compensate, [while] disgorgement aims to deter." ECF No. 339 at 4 (capitalization omitted). *Kleier* answers: "For the restitutionary purpose of this remedy to be served fully, the defendant generally should be required to turn over to the plaintiff not only the profits made from the use of the property, *but also the interest on these profits*, which can well exceed the profits themselves." 921 F.2d at 1041 (quotations omitted) (emphasis added); *see also id.* ("[I]t would be anomalous to hold that a plaintiff would be entitled to recover profits flowing from infringement but not revenue generated by the use of the profits." (quotations omitted)); *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 396 (3d Cir. 2016).

The Court sees no reason to doubt the Tenth Circuit's clear holding and reasoning—nor can it, lest it abuse its discretion, *see Kleier*, 921 F.2d at 1041—

particularly where other courts' understanding of *Kleier* bolster the conclusion that awarding prejudgment interest on disgorgement awards in copyright actions is proper. *See, e.g., In re Indep. Serv. Organizations Antitrust Litig.*, 23 F. Supp. 2d 1242, 1253 (D. Kan. 1998) ("The Tenth Circuit in *Kleier* did not draw any distinction between an award of prejudgment interest on the copyright owner's damages and an award of damages on the infringer's profits.") (citing 921 F.2d at 1041); *Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*, No. 1:18-cv-05385-SDG, 2024 WL 4327030, at *1 (N.D. Ga. Sept. 27, 2024) ("[C]ourts around the country have found pre-judgment interest appropriate for copyright violations . . . . *Kleier* is particularly instructive on the propriety of copyright pre-judgment interest where, as here, the jury has awarded infringer's profits."). And given *Kleier*'s obvious and binding applicability, the Court need go no further in engaging with Defendant's litany of unbinding and distinguishable cases. *See, e.g.,* ECF No. 339 at 6; *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2014 WL 788040, at *3 (D. Colo. Feb. 27, 2014) (declining to award prejudgment interest on disgorgement award on false advertising claim under the Lanham Act).

Finally, Defendant argues *Kleier* announced a two-part test whose application in this case precludes an award of prejudgment interest on the disgorgement award. *See* ECF No. 339 at 4. The Court notes *Klier* articulated its two-part test for awarding prejudgment interest *after* making clear that prejudgment interest is available in copyright actions. *See* 921 F.3d at 1042 n.4. Regardless, applying this test to this case still warrants an award of prejudgment interest on the jury's disgorgement award. First, an award of prejudgment interest would serve to compensate Plaintiff. *See id.*; *In re Indep. Serv.*

*Organizations Antitrust Litig.*, 23 F. Supp. 2d at 1250 ("Prejudgment interest is necessary to achieve the goal of compensating copyright owners under the Copyright Act.") (citing *Kleier*, 921 F.2d at 1042). Second, equities do not "preclude the award of prejudgment interest." *Kleier*, 921 F.2d at 1042 n.4 (quotation omitted). While Defendant argues prejudgment interest on the disgorgement award would be "exorbitant," under *Kleier* a defendant "should be required to turn over to the plaintiff not only the profits made from the use of the property, but also the interest on these profits, *which can well exceed the profits themselves*." 921 F.2d at 1041 (quotation omitted) (emphasis added). In other words, *Kleier* anticipated—and rejected—Defendant's windfall argument. The Court follows suit. Though notably, discussed below, prejudgment interest does not exceed the jury's disgorgement award.

The Court is bound by *Kleier*. Defendant fails to persuade otherwise. Accordingly, the Court rejects Defendant's arguments regarding the availability of prejudgment interest on the jury's $3,000,000 disgorgement award. For the reasons set forth above, and in exercising the Court's discretion, *see, e.g., Kleier*, 921 F.2d at 1041–42, prejudgment interest is available to Plaintiff on the jury's disgorgement award.

### 2. *Applicable Interest Rate*

The parties dispute what interest rate should apply. Plaintiff seeks application of Colorado's eight percent statutory interest rate, or, in the alternative, the "U.S. prime rate for borrowing." ECF No. 327 at 4. Defendant contends the Court should apply the "52-week Treasury bill rates." ECF No. 339 at 13. For the following reasons, the Court concludes it is appropriate to use the prime rate.

Regarding the award of prejudgment interest on copyright infringement claims, because "there is no federal statutory interest rate for prejudgment interest, trial courts have discretion to choose which rate to impose." *Live Face On Web, LLC v. Integrity Sols. Grp., Inc.*, 421 F. Supp. 3d 1051, 1073 (D. Colo. 2019) (citing *Kleier*, 921 F.2d at 1042 n.4).

After considering the parties' arguments and relevant legal authority, the Court applies the prime rate. *See, e.g., Live Face on Web*, 421 F. Supp. 3d at 1074. Such an application is in line with other courts' persuasive determinations regarding prejudgment interest rates in copyright infringement actions, and the Court finds application of the prime rate to be reasonable in this case. *See, e.g., id*; *Adept Computer Sols., Inc. v. Zoll Data Sys., Inc.*, Civil Action No. 05-cv-01917-RPM, 2008 WL 410581, at *1 (D. Colo. Feb. 14, 2008); *Notte v. New Sushi, LLC*, No. 22cv6394 (EP) (JBC), 2024 WL 706783, at *8 (D.N.J. Feb. 20, 2024); *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10-61532-CIV, 2011 WL 7394511, at *4 (S.D. Fla. Dec. 15, 2011).

From here, the Court has considered the parties' arguments regarding Plaintiff's prejudgment interest calculation. *Compare* ECF No. 327 at 4, *and* ECF No. 342 at 11, *with* ECF No. 339 at 14. In summary, Defendant has not persuaded the Court that Plaintiff's prejudgment interest calculation using the prime rate is erroneous. The Court discerns no error in Mr. Drews's use of a pro rata convention, rather than a mid-point convention. *See* ECF No. 327-1 at 3. Thus, the Court finds, in its discretion, that the calculation submitted by Plaintiff is reasonable and should be adopted. *See Adept Computer Solutions*, 2008 WL 410581, at *1 (exercising discretion and adopting

defendant's submitted and reasonable calculation); *Live Face on Web*, 421 F. Supp. 3d at 1074.

Accordingly, a **total amount of $1,216,045** is awarded in prejudgment interest to Plaintiff. This number represents the sum of prejudgment interest on Plaintiff's actual damages, $46,603, and profit disgorgement, $1,169,442. *See* ECF No. 327-1 at 3.

* * *

Plaintiff's Motion for Prejudgment and Post-judgment Interest is GRANTED. Plaintiff is awarded $1,216,045 in prejudgment interest. Plaintiff is further awarded post-judgment interest at the rate of 4.28%. *See* 28 U.S.C. § 1961(a); ECF No. 339 at 2 n.1.

### III.    CONCLUSION

Consistent with the above analysis, the Court DENIES Plaintiff's Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b), ECF No. 331, 338; DENIES Plaintiff's Contingent Motion for a New Trial Under Federal Rule of Civil Procedure 59, ECF No. 333; DENIES Defendant Otter Products, LLC's Renewed Motions for Judgment as a Matter of Law Under Federal Rules of Civil Procedure 50(b) and 52(b), ECF No. 335; and GRANTS Plaintiff's Motion for Prejudgment and Post-judgment Interest, ECF No. 327.

DATED this 9th day of April 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge